SOUTHERN PACIFIC RAILWAY COMPANY v. WILLIAM KENNEDY.

No. 523.

1. **Railway Company—Liability for Tort of Conductor—Ejecting Trespasser.**—Where a conductor, having ordered a trespasser from his train, shoots him while he is in the act of alighting, the company will be liable in damages therefor, unless the shooting was done from personal resentment, and not for the purpose of compelling the trespasser to get off.

2. **Same.**—But if the trespasser had reached the ground before being shot, the company would not be liable, since the ejectment would have been then completed.

3. **Practice on Appeal—Construction Below.**—Where the court below, without objection by defendant, places a certain construction on the wording of an allegation of fact in plaintiff's petition such as the pleading fairly admits of, this construction will prevail on appeal.

4. **Same—Conflict of Evidence.**—The plaintiff, soon after being shot, and while suffering greatly from the wound, gave one account of the shooting, and on the trial gave a different one. *Held,* that the determination of the jury as to which was correct would not be disturbed.

5. **Railway Company—Unnecessary Violence in Ejecting Trespasser.**—The law as to unnecessary violence in the expulsion of persons from trains is the same, whether the person was rightfully or wrongfully on board.

APPEAL from El Paso. Tried below before Hon. C. N. BUCKLER.

*Davis, Beall & Kemp,* for appellant.—1. On the right of railway companies to prohibit persons riding on freight cars, or to regulate the same: Railway v. Moore, 49 Texas, 32; Prince v. Railway, 64 Texas, 144; Railway v. Cocke, 68 Texas, 713; Railway v. Campbell, 13 S. W. Rep., 19; Railway v. Campbell, 76 Texas, 175; Railway v. Black, 27 S. W. Rep., 118; Eaton v. Railway, 15 Am. Rep., 515; Dunn v. Railway, 2 Redf. Am. Ry. Cases, 497, and note.

2. In order to hold the master liable for the act of the servant, the act must be done in the scope of the general authority of the servant, in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed. Railway v. Anderson, 82 Texas, 520; Railway v. Dawkins, 13 S. W. Rep., 983; Railway v. Moody, 23 S. W. Rep., 41; Echols v. Dodd, 20 Texas, 195; Dilling-

ham v. Russell, 73 Texas, 51; Tel. Co. v. Foster, 64 Texas, 221; Cool. on Torts, *535–537, and notes; Wood's Mast. and Serv., p. 536, sec. 279.

*Millard Patterson*, for appellee.—1. If, in performing any duty within the line of his employment, the servant uses unnecessary force in doing an act lawful within itself (the act of expulsion in this case was lawful within itself), and thereby commits a trespass or crime, then the act may be deemed one for which the master is civilly responsible. Dillingham v. Russell, 73 Texas, 54; Echols v. Dodd, 20 Texas, 194; Railway v. Anderson, 82 Texas, 520; 14 Am. and Eng. Encyc. of Law, 815; Wood's Mast. and Serv., 283, 294; Field on Corp. sec. 331; Rounds v. Railway, 64 N. Y., 129; same case, 21 Am. Rep., 597; Fire Assn. v. Fleming, 3 S. E. Rep., 420.

2. It is a general rule of the law of agency, that a principal is liable for any tort committed by his agent in the performance of the business which he is employed to transact, even though the particular act constituting the tort may have been done without the knowledge of the principal, and in violation of his express direction. 2 Mora. on Corp., secs. 730, 732; Rounds v. Railway, 64 N. Y., 129; Lyon v. Broadway, 32 N. Y., 242; 10 N. Y. Supp., 237; Railway v. West, 17 N. E. Rep., 789; Railway v. Gastka, 21 N. E. Rep., 522; Hoffman v. Railway, 87 N. Y., 25; Railway v. Kelley, 36 Kas., 655; Coal Co. v. Heeman, 86 Pa. St., 418; Wood's Mast. and Serv., sec. 277; Railway v. Kelley, 14 Pac. Rep., 172; Carter v. Railway, 49 Am. Rep., 781; Cohen v. Dry Dock Co., 69 N. Y., 170.

3. The evidence was conflicting, and as the jury found upon such evidence that the conductor, Roller, as a part of the act of expulsion in expelling plaintiff (appellee) from the freight train of defendant (appellant), shot the plaintiff before said act of expulsion was fully completed and ended, this court should not interfere with the verdict. Carter v. Carter, 5 Texas, 101, 102; Long v. Steiger, 8 Texas, 462; Scranton v. Tilley, 16 Texas, 192; Gamage v. Trawick, 19 Texas, 64, 65; Anderson v. Anderson, 23 Texas, 641; Baldridge v. Gordon, 24 Texas, 288; Adams vs. George, 25 Texas Supp., 376; McGloin v. Vanderlip, 27 Texas, 367; Ward v. Bledsoe, 32 Texas, 253; Ranger v. Harwood, 39 Texas, 140.

JAMES, CHIEF JUSTICE.—We conclude, as matters of fact, that plaintiff Kennedy, against the order of the conductor, got into a coal car as appellant's freight train was leaving El Paso, for the purpose of being carried west. Being detected when several miles out, the conductor ordered him to leave the train. After appealing to the conductor to be allowed to ride until the top of the grade was reached, so that he could return to El Paso on the helper engine, he was peremptorily told to get off. He then got down on the rear end of the west side of the coal car until he took a position standing on the oil box, with his arms raised over his head and his hands over the side of

the car. The oil box was about two feet from the ground, and lower than the flat car which followed, and the conductor was about seventeen or eighteen feet from him, standing towards the left edge of the flat car, which was loaded with rails or pipe. When plaintiff reached the position above described, he stopped and pleaded with the conductor to let him go on to the top of the grade, or claimed that the train was going too fast to get off safely. The conductor insisted, and then drew a pistol and fired at plaintiff, and at the same time this happened, plaintiff fell or jumped from the train, and the bullet struck him before his arms were lowered. The shot entered about an inch below the right armpit, and came out at the lower edge of the shoulder blade to the right of the backbone, about two inches below where it entered his body.

The injury resulting to plaintiff from this wound was shown to be serious and permanent, materially impairing his health and earning capacity.

*Conclusions of Law.*—The first assignment questions the first section of the charge, which is as follows: "If you believe from the evidence that on the 30th day of January, 1893, C. C. Roller was a conductor on one of defendant's trains, and was by it employed and placed in charge of such train, and that as such conductor he was authorized and empowered by defendant to eject trespassers from such train, or if you believe from the evidence that ejecting persons from such train who were wrongfully thereon was a part of his duty as such conductor, and that on said day plaintiff was on said train without lawful authority or right, and that said Roller while acting as such conductor, in the line if his duty and on behalf of the defendant, and in furtherance of its business and while attempting to eject the plaintiff from said car, and while the plaintiff was on said car, or while he was in the act of jumping therefrom, or while he was actually jumping from the same, shot and injured the plaintiff, then the defendant would be liable for such injury, and the fact that he was a trespasser upon said train would not alone prevent a recovery, if you should find that plaintiff was otherwise entitled to recover."

It is said that the charge was erroneous, because: 1. The evidence shows that the conductor did not shoot the plaintiff while attempting to eject him from the car, nor while he was on the car. Our view of the evidence disposes of this objection as hereinafter explained. 2. Because if the conductor shot plaintiff while he was in the act of jumping or actually jumping from the car, then he could not have shot plaintiff for the purpose of expelling him, or in furtherance of the defendant's business, as the plaintiff was at the time in the act of getting off, and was doing the very thing required of him. There is clearly nothing in this objection, if the idea appellant seeks to convey is, that because plaintiff was in the act of obeying the order of the conductor to get off, when shot by him, the master could not be liable

for violence thus used. It is the unnecessary violence used in performing the service that makes the liability. Wood's Mast. and Serv., sec. 294. In Haehl v. Railway (Mo.), 24 Southwestern Reporter, 737, a watchman of a long bridge, whose duty it was to keep off trespassers, caused one who was upon the bridge to turn around and go back, and when he turned the watchman struck him on the head with a club and chased him along the bridge, and before he had gotten across it shot him in the back, a verdict finding it to be an act done in the course of the watchman's employment was sustained. We do not agree with appellant, if such be its contention, that if plaintiff was in the act of getting down and off the train in obedience to the conductor's orders, and it was therefore not necessary to do anything further to effect the expulsion, that an act of violence then done upon him by the conductor could not be charged to the master. Such is not the law. The question is, whether or not the unnecessary violence was a part of the act of expulsion, and done in view of the master's service.

The charge may be understood as telling the jury that defendant would be liable if plaintiff was shot while in the act of jumping to the ground; that is to say, after he had sprung or fallen from the car, and before he had reached the ground. The assignment does not clearly state this as an objection to the charge. There can be no question that defendant would not be liable if the conductor had shot plaintiff after the expulsion was accomplished, but in our judgment the expulsion under the evidence in this case continued until he had struck the ground.

The charge is complained of further as being contradictory of a part of next succeeding section, to wit: "Or if you believe from the evidence that the plaintiff was on the car without right, and was ordered off by the conductor, and that in pursuance of such order the plaintiff was proceeding to get off said train or car, and while either standing on the oil box preparatory to jumping off, or while in the very act of jumping, the said conductor, not for the purpose of forcing the plaintiff to get off nor facilitating his exit from said train, but from personal resentment or anger aroused by the act or declaration then done or made by the plaintiff, then you will find for the defendant."

It is claimed that the first of said instructions destroyed the benefit to defendant of the instructions last mentioned. We can see no conflict whatever in these clauses. The latter one introduced a proper exception to the rule stated in the former one in response to an issue that was made.

The second error assigned is the refusal to give charge number 1 asked by defendant. This charge, it is said, would have corrected the inconsistency above referred to, but it was not in any material respect different from what had already been stated in the charges, and it was proper to refuse it.

The third error assigned is in reference to charge number 3, asked by defendant and refused, as follows: "The plaintiff alleges as the

ground of recovery, that as the plaintiff jumped from said coal car or was getting off of same, and just before he got off said train, the conductor of said freight train unlawfully and wrongfully shot plaintiff; and unless the evidence shows that plaintiff was shot before he got off the train you will find for the defendant; and you are further instructed, that the burden of proof rests upon the plaintiff."

The jury were distinctly charged that defendant would not be liable if plaintiff had alighted from the train and was on the ground when shot, irrespective of the cause or provocation for the shooting.

The petition does not clearly and definitely allege that plaintiff was shot while he was still on the car    The allegation is, "that as plaintiff jumped from said coal car or was getting off of same, and just before he got off, the conductor shot him."

The allegation will fairly bear the interpretation that the plaintiff was struck while on the car and in the act of getting off, or as he jumped from the car.    We think this meaning should be given to it, in view of the fact that the first clause of the charge of the court (above given) so construed it, and allowed the jury to find for plaintiff if he was shot while he was on the car or while he was in the act of jumping therefrom, or while he was actually jumping from the same, and nowhere has defendant objected to the charge in this respect, although it was otherwise assailed in the motion for new trial.

In view of this, if the petition is capable of the construction sought to be given it by the charge asked, it ought not to entitle defendant to a reversal.    The understanding which the court had of the petition, and upon which the case was tried and submitted (the petition admitting of it), ought to prevail under these circumstances.

The fourth assignment involves the refusal to give defendant's fourth special charge.    Everything in this charge we find to have been substantially given.

The fifth assignment is for refusing to give the following charge: "The liability of the railway company for the intentional acts of its employes does not arise when they step aside from its employment to commit torts which the company neither directed in fact, nor could be supposed from the nature of their employment to have authorized or expected the servants to do.    If therefore you find from the evidence that the conductor shot the plaintiff under such circumstance as that the company did not authorize the act or expect it to be done, you will find for the defendant.

The court had fully and correctly stated the rules of law applicable to the issues raised on this subject.    The jury were instructed, that defendant would be liable for the injury if the conductor inflicted it in the line of his duty, and on behalf of defendant and in furtherance of its business.    They were also instructed, in view of the issues, that they should find for defendant if they believed that the shot was fired not for the purpose of forcing or facilitating the expulsion, but from personal resentment or anger aroused, with or without a provocation

therefor. The rule of law applicable to the issues in the case was sufficiently stated, and the charge in question, if correct, was not more than a statement of the same in a different form.

This disposes of questions relating to the charges.

Appellant urges that the evidence is not sufficient to support a finding that plaintiff was injured before the expulsion had been accomplished. At this point we will state, that it was testified by the conductor that plaintiff on being ordered to leave the train assaulted him with a knife; that he had fallen down, and was in a recumbent position on the pipe on the flat car when in self-defense he shot plaintiff, who was over him at the time. The court directed the jury to find for defendant if these facts were true.

There was also testimony that plaintiff had directed some words to the conductor, and the court charged that the jury should find for defendant if they believed that such words were the cause of the shot being fired.

The jury were also instructed to find for defendant if plaintiff was shot after reaching the ground.

As the verdict was in favor of the plaintiff, it follows that the jury found that defendant was not shot in an altercation, nor from motives personal to the conductor, nor after alighting on the ground, and they therefore necessarily found that plaintiff was shot either while on the car or while in the act of falling to the ground, and in furtherance of the conductor's duties. Inasmuch as the conductor did not testify that he shot plaintiff when on the ground, nor while on the oil box, nor while falling or jumping, and the brakeman did not testify, the verdict must rest, if at all, upon evidence that emanated from the plaintiff himself.

It was in evidence, that plaintiff after leaving the train went to a neighboring house for assistance and conversed with a woman (Mrs. Graham), and Mrs. Graham as a witness on the trial testified, that plaintiff told her on that occasion that he had been shot after he was upon the ground. Mr. Graham testified, that he conversed with plaintiff on that occasion, and that plaintiff said that he had been put off by the conductor and shot by him after he was on the ground. According to Mrs. Graham's testimony, her husband did not have the conversation with plaintiff he testified to. After leaving the house, plaintiff went to the track and signaled the returning engine by means of a lighted paper, and was brought to El Paso and placed in a hospital. While there he was expected to die, and there was in evidence a statement signed by him while at the hospital giving an account of the transaction, in which it was stated that he was shot after he had hit the ground. The Sister who nursed him testified, that plaintiff told her the same thing. Enough appeared, however, from the evidence to show, that although the statement was taken as fairly as was possible under the circumstances in expectation of his death, that plaintiff was not at all times at himself while at the hospital, and at

the time the statement was taken he was very low and in a semi-unconscious condition from opiates and from the wound, and had to be aroused to answer questions. There was evidence that he was delirious on occasions at the hospital. It was testified to by the engineer who brought him back to El Paso, that his recollection of what plaintiff told him while on his engine was that the conductor had shot him as he jumped from the train.

We do not think that there can be a serious doubt in regard to the right of the jury to give the above testimony the weight they deemed it entitled to, and disregard it if they thought proper. It can not be treated as conclusive against his right to recover, if there was testimony circumstantial or otherwise tending to show that he was shot before he was on the ground. The jury certainly were authorized to ignore the statements made at the hospital, and in the light of plaintiff's testimony and the engineer's, it can not be said that they were not the judges of the weight to be given the testimony of Mrs. Graham.

According to the plaintiff's version given at the trial, he was unable to say positively whether he was on the car, in the air, or on the ground when struck by the bullet, but his impression was that he still had his foot on the oil box when struck. He testified, however, that he was standing on the oil box when the conductor said "Get off," as he made a motion for his revolver, and as his hand came out of his pocket he fired, and that his pistol was pointed at him while he was on the oil box. Plaintiff testifies, that he felt a stinging sensation in his breast at the time he let go. It would appear that he was struck before his arms lowered, from the fact that the bullet did not strike his arm, and went in directly under the arm pit that was toward the conductor, and took a course that was probable for it to take from the relative position of the parties. There is no testimony that plaintiff raised his arm or was in a position while on the ground or before reaching it to make it probable that he received the wound after being off the car. Besides, it was night and the train in motion, which would lessen the probability of the shot taking effect as it did after he was off the car. We can not, in view of this, say that the undisputed evidence was that the shot was fired after plaintiff had gotten off the train, and required a verdict for defendant.

As to whether or not the shot was fired and plaintiff was struck before reaching the ground, there was no testimony save that given by plaintiff, if we discard the statements or admissions that had been made by plaintiff. The testimony of the conductor was not on that subject, for he testified that he shot plaintiff on the flat car. The jury were charged to find for defendant if they believed that plaintiff was shot on the ground, and the verdict being for plaintiff, shows that the admissions were not given any weight, and that the jury found he was shot before he was on the ground. This left the case to stand on the testimony of plaintiff, who, it is true, was uncertain as to whether he was on or off the car when struck by the bullet. But there is no un-

certainty in his testimony about the pistol being drawn and pointed at him before he left the box, and that the shot immediately followed. It would in our opinion be immaterial if the bullet did strike him after he was off the car, while in the act of falling or jumping .to the ground. From plaintiff's testimony it was all one act, and was begun while he was still on the car

There was a motion to arrest judgment on account of the insufficiency of the petition. It stated, that the petition failed to show what relation plaintiff bore to defendant, failed to show that plaintiff was himself without wrong, failed to show that the act complained of was done under such circumstances as to be the act of defendant, and generally fails to set out any good cause of action against defendant.

The answer alleged, in effect, that plaintiff was a trespasser on the train, and so far supplemented the petition. The law as to unnecessary violence in expulsion of persons from trains is the same, whether the person was rightfully or wrongfully on board. The petition was sufficient on general demurrer, and therefore the motion in arrest was correctly overruled.

The judgment is affirmed.

*Affirmed.*

Delivered December 12, 1894.