**SAMARITANO et al. v. GALVESTON, H. & S. A. RY. CO. (No. 8040.)**

(Court of Civil Appeals of Texas. Galveston. April 13, 1921. Rehearing Denied April 28, 1921.)

**1. Carriers ⬤➡383 — Direction of verdict for carrier in action for injuries on being ejected from train held proper under evidence.**

In an action for injuries sustained through being shot by a deputy sheriff on being ejected from a train for nonpayment of fare, evidence *held* not to raise the issue of the carrier's liability, so that a directed verdict for defendant was proper.

**2. Carriers ⬤➡365(2)—To throw rocks at one stealing ride on top of coach and firing a shot to scare him held not an unlawful assault.**

In a minor's action for personal injuries through being shot by a deputy sheriff on being ejected from a train for nonpayment of fare, evidence that the conductor caused rocks to be thrown at plaintiff while on top of a coach, and firing a shot in the air for the purpose of scaring him, *held* not to show an unlawful assault or wrongful exercise of authority in accomplishing the ejection.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Consolidated actions by Frank Samaritano and another against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

Woods, Barkley & King, of Houston, for appellants.

Baker, Botts, Parker & Garwood and Garrison, Pollard, Morris & Berry, all of Houston, for appellee.

PLEASANTS, C. J. The following sufficient statement of the pleadings, and the proceedings had upon the trial in which the judgment from which this appeal is prosecuted was rendered, is copied from appellants' brief:

"The two suits of appellants, that of Frank Samaritano, a minor, suing by Matteo Samaritano, father and next friend and that of Matteo Samaritano himself, were filed in the district court of Harris county, Tex., in the Eightieth district court of Harris county, Tex., October 18, 1915. In these two actions the appellants sought to recover from the appellee for damages alleged to have been sustained by reason of an assault made upon the person of the minor appellant, Frank Samaritano, on or about June 26, 1915, by the agents and servants of the appellee, Galveston, Harrisburg & San Antonio Railway Company. The respective petitions of the appellants allege that, on or about the 26th day of June, 1915, appellant Frank Samaritano, then about 16 years of age, together with two other boys of about his own age, boarded one of appellee's east-bound passenger trains at or near the city of San Antonio, which said train ran from San Antonio to Houston, passing through Seguin, Tex., and that, being without funds to pay his fare, Frank Samaritano was then and there riding on said passenger train without having paid his fare; that the conductor in charge of said train, before it reached Seguin, telegraphed to local officers in Seguin, requesting such officers to meet said train and take appellant and said other two boys off of said train; that when said train reached Seguin there were two officers present, who assisted the conductor in charge of the train in removing appellant and the other boys from the top of the passenger coach upon which they were then and there riding; that in undertaking to remove the said boys from the passenger coach the conductor and said officers assaulted appellant and the other boys by throwing rocks at them, and by firing a shot from a pistol in the air; that such assault continued until the said boys had been forced to alight from the said train, and that as they alighted two of the boys were caught by the conductor and said officers, and appellant Frank Samaritano, who undertook to run away when he had alighted from said train, was shot by one of the officers, the bullet passing through his body and penetrating his lungs, thereby inflicting a serious and permanent wound, for which damages were sought to be recovered in these actions. The petitions allege that the officers, in making the assault, and in shooting appellant Frank Samaritano, were acting under the direct supervision and instructions from the conductor. The two original petitions of the appellants, in so far as they state the facts upon which liability of the appellee is based, are identical.

"The appellee's answer consisted of general demurrer, general denial, and a special answer, in which the appellee alleged that the appellant Frank Samaritano was shot by an officer while he was either making fight on the officer who made him leave said train, or was doing some other act which caused the said officer to feel himself justified in firing upon appellant, but said officer was in no wise acting for the defendant company, and had no authority from defendant company to fire any shot at appellant, and appellee specifically denied that the conductor, or any other person representing appellee, aided or abetted the said officer in firing upon appellant, and had nothing to do with appellant having been shot, but alleged that after the appellant, Frank Samaritano, had left the train, or had been taken therefrom, and when appellee had no further con-

cern about the appellant, the trouble arose between appellant and one of the officers, and the shooting thereupon happened. Appellee specifically denied that either of the said officers were the agents of appellee, either in fact or in law, but pleaded in the alternative that if they were held to be said agents then they were acting without the scope of their authority, and that, acting as they did,. they could not bind appellee.

"On May 21, 1920, under agreement of parties, it was ordered by the court that the two suits instituted by Matteo Samaritano and Frank Samaritano, by next friend, against the appellee, Galveston, Harrisburg & San Antonio Railway Company, be consolidated.

"Upon the trial of the case, after appellant had rested, appellee moved the court to peremptorily instruct the jury to return a verdict in favor of the defendant, which motion was granted, and the jury instructed to return a verdict in favor of defendant."

Upon return of such verdict judgment was rendered in accordance therewith.

The only question presented by the appeal is whether there was any evidence raising the issue of appellee's liability for the injury caused appellant Frank Samaritano by the gunshot wound inflicted upon him by the deputy sheriff of Guadalupe county.

Appellants' contention is thus clearly stated in their first assignment of error:

"The court erred in peremptorily instructing a verdict in favor of the defendant, for the reason that the evidence adduced by plaintiff was amply sufficient to show and would have warranted a finding by the jury to the effect that the servants, agents, and employés of the defendant, in ejecting plaintiff, Frank Samaritano, from a certain railway train of defendant, and undertaking to accomplish the arrest of plaintiff, and while acting within the scope of their employment, assaulted and shot plaintiff; that the said assault was made upon plaintiff while he was still on board of defendant's said train and continuing without interruption, and as one continuous act, by the agent and servant of the defendant, the conductor in charge of said train, and by Holloman, a deputy sheriff, acting for the defendant, under the express supervision and direction of the said conductor, culminated in the shooting of plaintiff, as aforesaid, after he had alighted from said train; that the evidence thus adduced clearly raised the issue of defendant's liability, and plaintiff was entitled to have said issues, raised by the pleadings and evidence, submitted to the jury."

The evidence relied on by appellants to sustain this assignment is the following testimony of Frank Samaritano:

"On this particular trip I left San Antonio on my way to Houston at something like 9 or 9:30 o'clock at night. At that time I was riding a passenger train; I was beating my way. I boarded the train three miles from San Antonio at an open switch. The other boys were with me. I did not know the other two boys; I fell in company with them at the switch at San Antonio; they were catching the same train.

"I was 15 years old at that time; I was coming sixteen. I was undertaking to come to Houston. I arrived at Seguin at something like 10:40. I was riding on top of the train, about the second or third coach from the rear of the train.

"It was about 10 o'clock at night when we got to Seguin, and the first thing we knew there was a sheriff, one on the right-hand side and another sheriff on the left-hand side of the train, and the conductor was standing there also with the sheriff on the left-hand side of the train, and he first started ordering us to get off, at least the two boys was up a little forward of where I was, and one was in between, and he was more talking to the boys in front, ordering them to come down. I refer to the conductor. The conductor was first ordering us to come down off the train, and then he started ordering for the other sheriff to start throwing rocks, and to get on top of the train and knock us off; so I don't know who it was got on top of the train, whether it was the porter, but whoever it was, I think it was one fellow on top of the train, and he knocked one boy off; and the conductor said to fire and scare us off—told that to the sheriff—so the sheriff fired one shot up in the air, and when he done that he ordered again for us to get off, and when he done that they started throwing rocks on top of the train for us to get off— the conductor and the sheriff did that—and by that time we jumped off the train, and when we jumped off the train the sheriff had got the boy that had got down and give him to the conductor, and when we jumped down on the left-hand side, and the other sheriff was on the right-hand side, and when the other boy jumped down the sheriff got the other boy, and I started to run, and I had got probably 20 or 30 yards from them, started to run that way, and he hollered for me to stop, and when I turned around and stopped, as soon as I just got about turned around he fired and hit me right in the lung. The deputy sheriff fired. The conductor was standing right there with the deputy sheriff when the sheriff shot me. The distance between them was about the distance from the judge to here; that is, about one or two feet. The other boy who had gotten off of the car with me at the time he shot was standing with the conductor and this deputy sheriff. The sheriff had caught this boy that jumped off with me and given him to the conductor. It was two or three minutes after the sheriff had done this before he fired the shot at me. When they were throwing rocks at me the conductor and the deputy sheriff were standing right there together.

"I spoke about them firing the shot to scare us off. The sheriff was standing there; the conductor was giving him orders to get us off one way or another, shoot us off or knock us off, one way or another, as long as he got us off, either shoot us off or knock us off; he wanted us off of the train. Those orders were given by the conductor from three to five minutes before I had been shot. There was another shot fired before I was shot, the first shot was fired to scare us off the train. There was only two shots fired. The same man fired both shots."

This witness further testified:

"I was facing him when he fired the shot; I was standing. Just before he fired the shot he said, 'Halt!' I was running away from him, and he told me to halt, stop, so when he said that I turned around to face him, to come towards him, and as I turned around he fired. * * * He was standing right at the right where I was on top of the coach, and after he had fired the shot he started to ordering me to come down, so we started down, and when he done that I started to run; he had the other boy, and by that time when he hollered to stop I turned around and faced him. I stopped because he hollered to halt, stop running. I hadn't seen before that whether he had anything only at the time he fired the shot; that is, the first shot when we was on top of the train after I turned around I could see him; he was standing with his revolver in his hand hollering, 'Halt!' and when I turned around he had his revolver in his hand, and he fired. There was nothing said that I know of after I started running except to halt. * * * I had gotten something like 50 or 75 yards from the train. The man did not run after me that shot me; he was standing right at the train, and I had gotten off about 75 yards from it. I had gotten something like 15, 16, or 17 yards from the train when he hollered to me to halt; I had gotten that far from the place where I got off; I had gotten about 75 yards off when he shot me. I had not put my hands up when I came back, and then he just shot me."

[1] We agree with the trial court that this evidence fails to raise the issue of appellee's liability for the injuries complained of in plaintiffs' petition.

[2] Appellants' theory that the shooting of Frank Samaritano was the continuation of an unlawful assault begun upon him while he was on the train under the orders and direction of the conductor of the train is not borne out by the evidence. The presence of the officers at the train is not accounted for by the evidence, nor is it shown for what reason or upon what charge they were attempting to arrest the boys who were riding on the top of the coach. But if we assume as true the allegations of the petition that they were there in response to a telegram from the conductor requesting their assistance in ejecting persons wrongfully riding on the train, the evidence fails to show any assault or wrongful exercise of authority on the part of the conductor in accomplishing the ejection of appellant from the train. We do not think that throwing rocks on top of the car and firing a shot in the air for the purpose of scaring the boys off the train could be considered an unlawful assault. The conductor in the discharge of his duty to protect his train had the right to use the force, or show of violence, reasonably necessary to further that purpose, and we do not think he exceeded his lawful authority in this regard.

If, however, this conclusion is not sound, no injury was sustained by appellant by what was done in ejecting him from the train, and no damages are claimed for an assault made upon him while he was on the train or being ejected therefrom. After he had gotten off the train and was 75 yards therefrom he was shot by the officer, who was seeking to take him into custody. There is nothing in the evidence to indicate that the arrest of the appellant was made at the suggestion of the conductor. And if he had directed the officer to pursue and arrest the appellant he would not have been acting within the scope of his authority, and appellee could not be held liable for damage resulting from his unauthorized act. As before stated, the evidence fails to show that the officers were acting as the agents of appellee in ejecting the boys from the train, and for aught that this record shows they may have gone to the train for the purpose of arresting appellant upon some criminal charge in no way connected with his wrongful act in riding upon appellee's train without paying his fare, but if they were there, as alleged, to remove appellant from the train, the shooting of appellant was not so immediately connected with his ejection so as to render appellee liable for the injury thereby caused him.

The case of Railway Co. v. Kennedy, 9 Tex. Civ. App. 232, 29 S. W. 394, correctly states the rule of liability applicable to cases of this character, and under the rule there stated appellee cannot be held liable upon the evidence in this record.

It follows that the judgment of the trial court should be affirmed; and it has been so ordered.

Affirmed.