ARTHUR T. RAMSAY, Respondent, *v.* ABRAHAM P. MILLER et al., Appellants.

Nonsuit — motion for nonsuit on defect in formal proof must point out specifically such defect — ratification — when question whether certain acts, purporting to be done by one person for another, were ratified by the latter, is for the jury.

1. It is settled practice that a motion for a nonsuit cannot be sustained on account of a defect in formal proof which might have been obviated, unless the motion points out specifically the defect, and the rule is the same on a motion for the direction of a verdict.

2. One may ratify the acts of another purporting to be made on his behalf whether that other is an agent exceeding his authority or no agent at all.

3. Plaintiff speculated in stocks through a manager of defendants. The manager substantially exhausted plaintiff's balance by unauthorized transactions and stated to plaintiff that he would adjust the matter and save the plaintiff harmless if plaintiff would keep quiet. This plaintiff ageed to do and took from the manager a policy of insurance and some mining stocks, which plaintiff returned several months after, and first communicated the facts to defendants nearly a year after their discovery. *Held*, that the evidence of ratification by plaintiff was such as to require its submission to the jury.

*Ramsay* v. *Miller*, 135 App. Div. 503, reversed.

(Argued March 24, 1911; decided April 25, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 10, 1910, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Benjamin N. Cardozo* for appellants. The plaintiff ratified the transactions conducted in his behalf. (*Denny* v. *Manh. Co.*, 5 Den. 639; *Hall* v. *Lauderdale*, 46 N. Y. 70; *Calvin* v. *Holbrook*, 2 N. Y. 126; *Montgomery Bank* v. *Albany City Bank*, 7 N. Y. 459; *Matter of Flaherty* v.

*Milliken*, 193 N. Y. 564; *Fowler* v. *B. S. Bank*, 113 N. Y. 450; *Riley* v. *Albany Savings Bank*, 36 Hun, 513; *Dechen* v. *Dechen*, 59 App. Div. 166; *Glor* v. *Kelly*, 49 App. Div. 617; *Andrews* v. *Æ. L. Ins. Co.*, 92 N. Y. 596; *Steibel* v. *Haigney*, 134 App. Div. 516.)   The plaintiff's dealings with Ludwig worked a ratification, not only of the purchases and sales made in his behalf, but also of the payments of $1,950 wrongfully charged by Ludwig to the plaintiff's account.   (*Kelley* v. *N. R. R. Co.*, 141 Mass. 496; *Combs* v. *Scott*, 12 Allen, 493, 497; *Phosphate of Lime Co.* v. *Green*, L. R. [7 C. P.] 43; *Hyatt* v. *Clark*, 118 N. Y. 563.)   The transactions ratified by Ramsay were fully proved.   (*Matthews* v. *Hubbard*, 47 N. Y. 428; *Steiger* v. *London*, 138 App. Div. 246; *Tisdale* v. *D. & H. C. Co.*, 116 N. Y. 416; *Holmes* v. *Jones,* 121 N. Y. 461; *Roscoe Lumber Co.* v. *Standard Silica Co.*, 62 App. Div. 421.)

*William W. Mumford* for respondent.   The transaction between Ramsay and Ludwig on July 8, 1907, was, in its inherent character, not a ratification but an agreement on the part of Ramsay procured by Ludwig's representations, not to inform Miller & Co. of Ludwig's substitution of his own buying orders for Ramsay's account in the place of Ramsay's, provided Ludwig paid an existing debt which Miller & Co. owed Ramsay.   (*Norden* v. *Duke*, 120 App. Div. 1.)   There could be no ratification without full knowledge on the part of the plaintiff of the material facts, and the evidence is he had no such knowledge.   (*Ritch* v. *Smith*, 82 N. Y. 627; *Baldwin* v. *Burroughs*, 47 N. Y. 199; *Pritchard* v. *Sigapes*, 103 App. Div. 535; *Blass* v. *Terry*, 156 N. Y. 122; *Trustees, etc.,* v. *Bowman*, 136 N. Y. 521; *Seymour* v. *Wyckoff*, 10 N. Y. 213; *Hogue* v. *Simonson*, 94 App. Div. 139.)

CULLEN, Ch. J.   The defendants were stockbrokers in the city of New York, having a branch office in Washington, of

which one Ludwig was the manager.   In January, 1907, the plaintiff commenced to speculate in stocks through the Washington branch, depositing the sum of $1,000, to which were subsequently added the further sums of $3,000 and $2,000.   On July 6th the plaintiff ordered the sale of all the stocks the defendants were carrying for him and that his account be closed.   On the 8th he received a message from Ludwig's wife stating that Ludwig was at home ill, and the plaintiff went to see him.   Ludwig then told the plaintiff that his money was all gone, that he, Ludwig, had not given the defendants orders for the purchase of the stock the plaintiff had ordered, but for other stocks not directed by the plaintiff, and then said to the plaintiff: "If you will just be quiet and will not do anything about it I will readjust this matter and pay you your money."   Ludwig's wife said to the plaintiff: "Mr. Ramsay, this house belongs to me, and you know that it is worth four or five thousand dollars and I will deed it to you to pay back the money that has been wrongfully used of yours."   She also said that her brother had money and she would send for him and they would adjust this matter.   Finally the plaintiff told Ludwig that he would wait for an adjustment to be made.   On cross-examination he testified that Ludwig and his wife stated to him that if he would be quiet and would not do anything about it, Ludwig would adjust the matter and save the plaintiff his money, and that the plaintiff told Ludwig that he would keep quiet if he would adjust the matter, as he promised.   Ludwig subsequently gave to the plaintiff as security a policy of life insurance and also some shares of mining stock.   These were returned to Ludwig in the winter of 1907 or in the early part of 1908.   After this conversation the plaintiff did not tell the defendants anything about the transaction until November 8, 1907, when he first communicated with the defendants about the wrong that Ludwig had done, and this action was commenced on February 5th, 1908.   The

answer of the defendants was to the effect that the plaintiff's deposit had been exhausted except a balance of $11.02 by losses on purchases and sales made for his account, and by payments made to him of money. The defendants rendered the plaintiff a statement of his accounts showing the various transactions which they claimed to have been effected on his behalf. This account the plaintiff repudiated. On the trial it was proved by the plaintiff's testimony, which was not contradicted, that nearly all the purchases and sales assumed to be made by the defendants on his account were not authorized by him, but ordered by Ludwig without the plaintiff's authority. Excluding the unauthorized transactions the balance due the plaintiff was the sum of $5,860 and interest. Of the items charged against the plaintiff in defendant's account $1,950 was drawn by Ludwig, by his checks as manager, on the defendants' bank account in Washington and appropriated to his own use. The defendants, after having requested the direction of a verdict against them for the balance of $11.02, which was denied, asked the court to submit the case to the jury on the question of ratification. This request was also denied, to which the defendants excepted, and the court directed a verdict in the plaintiff's favor for the full amount claimed and interest.

The question in this case is, was the evidence sufficient to require the submission to the jury of the question whether the plaintiff had not ratified Ludwig's unauthorized orders for the purchase and sale of stocks. As to the $1,950 drawn by Ludwig from defendants' bank account and appropriated by him, we see no theory on which the charge of that sum against the plaintiff can be sustained. But the remainder of the account rendered by the defendants presents a very different question. It is true that Ludwig was the defendants' agent, not that of the plaintiff. But this fact did not necessarily preclude the plaintiff from ratifying his acts. One may ratify the

C

acts of another purporting to be made on his behalf
whether that other is an agent exceeding his authority
or no agent at all. (Huffcut on Agency, § 30.) This
principle is recognized by this court in *Hamlin* v. *Sears*
(82 N. Y. 327), where Judge EARL said : "The general
doctrine that one may, by affirmative acts, and even by
silence, ratify the acts of another who has assumed to
act as his agent, is not disputed. It is illustrated by
many cases to be found in the books, and set forth by all
the text writers upon the law of agency. (Citing authori-
ties.) But the doctrine properly applies only to cases where
one has assumed to act as agent for another, and then a
subsequent ratification is equivalent to an original author-
ity." (p. 330.) It is urged on this appeal that there was
no proof that the sales and purchases of stocks charged
against the plaintiff were directed by Ludwig ostensibly on
plaintiff's account. No such point, however, was made on
the trial, which seems to have proceeded on the assumption
that the transactions were so directed. Proof of the sales
and purchases made in the account was rendered unnec-
essary by the stipulation of the parties that the transac-
tions had actually been made, reserving, however, the
plaintiff's repudiation of the defendants' authority to
make them on his account. Had the point now raised
been suggested on the trial the defendants could have
made further proof. It is settled practice that a motion
for a nonsuit cannot be sustained on account of a
defect in formal proof which might have been obviated,
unless the motion points out specifically the defect (*Binsse*
v. *Wood*, 37 N. Y. 526; *Gerding* v. *Haskin*, 141 N. Y.
514), and the rule must be the same on a motion for the
direction of a verdict.

The final question in the case is, therefore, whether the
evidence of ratification was such as to require its sub-
mission to the jury. We think it was. Ratification is
based on assent, which may be either express or implied.
If the principal adopts the acts of the agent it is the

same as if he had originally conferred authority upon the agent. While silence alone in many cases may be insufficient to constitute ratification, still it is competent evidence for the purpose. In this case there was proof that the plaintiff not only remained silent for some months, but that he agreed to remain silent, and that he received from Ludwig certain securities. If, in consideration of the agreement of Ludwig and his wife and of the securities turned over to him, he agreed to accept the purchases and sales ordered by Ludwig as authorized and to look to him for the payment of the losses thereon, then there was a ratification of Ludwig's acts. Whether this was the fair import of the negotiations and transactions between the plaintiff and Ludwig was a question of fact to be determined by the jury.

The judgment should be reversed and a new trial granted, costs to abide the event.

GRAY, VANN and HISCOCK, JJ., concur; WERNER and COLLIN, JJ., dissent.

Judgment reversed, etc.