## LYNCH DAVIDSON & CO. v. DENMAN LUMBER CO.  (No. 8390.)

(Court of Civil Appeals of Texas. Galveston. March 17, 1923. Rehearing Denied April 12, 1923. Motion for Rehearing and to Certify Denied Oct. 4, 1923.)

**1. Venue ⬳7—Evidence held to show contract by agent and ratification by principal with full knowledge of facts.**

In an action for the purchase price of lumber sold, evidence that seller had authorized the person who took the purchaser's order to take orders to send them to plaintiff, and that several such orders had been received and had been filled by plaintiff, together with other evidence including correspondence, *held* to warrant a finding that such agent contracted to sell the lumber described in defendant's order and that, after plaintiff had full knowledge of all the material facts relative to the making of the contract, it had ratified and confirmed the same, fixing the place of the contract as the place where made by the agent.

**2. Principal and agent ⬳175(3)—Ratification of salesman's contract relates back to time and place where order taken.**

Where the seller had solicited one to procure orders on commission for the sale of merchandise, and had filled similar orders before, and had paid the commission to such person on the particular sale at issue, the seller will be held to have confirmed, ratified, and sanctioned the contract made by its agent, and such ratification relates back to the time and place where the salesman took the order.

**3. Principal and agent ⬳164(1)—Ratification not dependent on existence of contract of agency.**

One may ratify the acts of another purporting to be made on his behalf, whether that other was his agent exceeding his authority or was not his agent at all.

**4. Venue ⬳7—Place of contract made by agent and ratified by principal is place where made by agent.**

Where one ratifies contract made by his agent in excess of authority or a contract made in his behalf by one not his agent, the ratification relates back, and the contract will be considered as made at the place where the agent and the other party to the contract made the agreement.

**5. Evidence ⬳472(1) — Witness not permitted to testify as to construction of contract.**

In an action for the purchase price of lumber sold under contract, made with the seller's ostensible agent, and claimed to have been ratified by the seller, the court properly refused to permit an officer of plaintiff lumber company to testify that he treated defendant's order for the shipment as coming from defendant itself and not as a contract already entered into between plaintiff and defendant through plaintiff's agent, since the construction of such contract was the function of the judge.

**6. Witnesses ⬳248(2)—Expected answer held nonresponsive and not pertinent.**

In an action for the purchase price of lumber, where defendant claimed a plea of privilege because the contract was made by plaintiff's agent and by plaintiff ratified, there was no error in excluding the answer to a question as to whether or not the witness treated plaintiff's order simply as if coming from the defendant company itself, where the answer of the witness, had it been permitted as shown by the bill of exceptions, would have been that, if he had treated it as coming from the company itself, "we would just treat it as an offer;" the answer not being responsive to the question propounded and not pertinent or material to any issue.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by Lynch Davidson & Co. against the Denman Lumber Company. From an order sustaining defendant's plea of privilege, plaintiff appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, for appellant.

J. M. Burford, of Dallas, for appellee.

LANE, J. Lynch Davidson & Co., a private corporation, domiciled at Houston, in Harris county, Tex., brought this suit in the district court of Harris county, against Denman Lumber Company, also a private corporation, domiciled at Mt. Pleasant, in Titus county, Tex., to recover the contract price of certain lumber shipped by the plaintiff to the defendant at Mt. Pleasant, upon the contract hereinafter shown.

In due time and in manner and form as provided by law the defendant filed its plea of privilege, asserting its right to be sued in the county of its residence.

To such plea the plaintiff filed its contest, alleging that the contract between the parties upon which the lumber was sold and delivered was made in Harris county, Tex., and that a part of the cause of action sued on arose in Harris county, Tex.

The plea of privilege of the defendant was sustained by the trial court, and, from the action of the court, the Lynch Davidson Company has appealed.

### Facts.

It was shown that one W. H. Bratton was a lumber broker; that is, that his business was that of a broker in the sale of lumber to such persons or corporations as were in the market for the purchase of lumber, for a commission to be paid by the seller, based upon such orders as he might receive from proposed purchasers and sent in to the seller, after approval by the seller. Prior to the transaction involved in this suit, the Continental Lumber Company, known in this suit and hereinafter called the Lynch Davidson

Company, the appellant, knew Bratton and knew that he was engaged in the sale of lumber as a broker, as above stated. During the month of September, 1920, and for some time prior thereto, appellant had received orders taken from proposed purchasers by Bratton on several occasions, filled many of them, and paid him a commission or compensation of 50 cents on each 1,000 feet of lumber shipped on said orders; none of these prior orders, however, were for the appellee, Denman Lumber Company. On the 10th day of September, 1920, W. H. Bratton called upon T. L. Denman, president of the Denman Lumber Company at Mt. Pleasant, in Titus county, Tex., and stated to him that he was with the Continental Lumber Company of Houston, Tex., and had authority to take orders for said company. and the Denman Lumber Company, thereupon, through its president, gave Bratton the following order for lumber:

Manufacturers, Dallas, Texas.
September 10, 1920.

Continental Lumber Company, Houston, Texas:

Ship—Denman Lumber Company at Mt. Pleasant, Texas.

Invoice to—Same, at same.

Price—F. o. b. Mt. Pleasant, Texas. Classification, 29½ cents.

Terms: 60 days net; 2% 5 days after arrival of car at destination; 1% 30 days from date of invoice; 8% interest charged on all invoices after maturity.

| Sept. 13, 1920. | | Order. | | 3 Cars |
| --- | --- | --- | --- | --- |
| Quantity. | Size. | Length. | Description. | Price. |
| 3000 ft. | 1x4 | 12 | B&B flg. | $71.50 |
| 8000 ft. | " | 14 | " | 71.50 |
| 6000 ft. | " | 16 | " | 71.50 |
| 2000 ft. | " | 18 | " | 71.50 |
| 2000 ft. | " | 20 | " | 71.50 |
| 200 pcs. | 2x4 | 18 | #2 S-4-S | 42.50 |
| 200 pcs. | " | 20 | " | 42.50 |
| 16000 ft. | 1x6 | 10 to20 | B&B D/S #117 | 64.50 |
| 200 pcs. | " | 12 | B&B S/S K.D. | 87.50 |
| 400 pcs. | " | 14 | " | 87.50 |
| 200 pcs. | " | 16 · | " | 87.50 |
| 4000 ft. | 1x8 | 10 to20 | " | 87.50 |
| 4000 ft. | 1x12 | " | " | 87.50 |
| 5000 ft. | 5/8x12 | " | B&B Clg. | 62.50 |
| 2000 ft. | 1x5 | " | B&B S/S K.D. | 87.50 |
| 25000 ft. | 3/8x1-1/2 | 32" | #2 S.D.lath | 5.50 |

Ship finish, ceiling and siding heavy on 14 and 16 ft. Prompt shipment from Benford.

W. H. Bratton.

This order was mailed to, and promptly received by, appellant, at its office in Houston. At the time this order was taken, Bratton was not an employee of appellant and had no authority to make a binding contract in its behalf. Appellant had, however, as before stated, agreed to pay Bratton a commission of 50 cents on each 1,000 feet of lumber shipped by it on orders he might procure, and prior to taking the above-mentioned order from Denman Lumber Company, he had, on several occasions, procured and sent to appellant orders for lumber under such agreement; many of which were accepted and filed by appellant. After appellant had received the above-mentioned order of Denman Lumber Company, to wit, on the 13th day of September, 1920, it made an exact copy of the bill of lumber sent in by Bratton for the Denman Lumber Company, but omitted the words: "Ship finish, ceiling heavy on 14 and 16 ft. Prompt shipment from Benford," which appeared at the foot of the order. Just below the copy it wrote as follows:

"Order No. 5778. Invoice to Denman Lumber Company, Mt. Pleasant, Texas.

"We have entered your order, as above, with thanks. Please check carefully and advise immediately if not correct, otherwise we will not be responsible for any errors.

"Yours very truly,
"Continental Lumber Company.
"Houston, Texas, Sept. 13, 1920."

On the 14th day of September, 1920, appellant wrote Denman Lumber Company the following letter:

"Sept. 14, 1920.
"File 5778.

"Denman Lumber Company, Mt. Pleasant, Texas.—Gentlemen: We are pleased to acknowledge receipt of your order through our Mr. W. H. Bratton calling for three cars of material to be shipped to yourselves at Mt. · Pleasant, Texas. We have entered this valued business under our No. 5778, confirmation herewith inclosed. We passed this order to our mill yesterday with instructions to give same their special attention and load out promptly. We thank you very kindly for this business, and assure you that same will receive our best attention and is highly appreciated. Our stock at present is very complete, and we can take care of your wants for anything in general yard and shed items. We would be pleased to have your inquiries from time to time, as we are sure our prices are always in line with the market. Again thanking you for this business and awaiting your further commands, we remain,

"Yours very truly, '
"JIL/W        Continental Lumber Company.
"Cc to W. H. Bratton."

The copy of the above-mentioned order and the letter at the bottom thereof, and the letter of the 14th of September, were inclosed under one cover and were mailed at Houston, Tex., and addressed to and received by the Denman Lumber Company at Mt. Pleasant, Titus county, Tex.

On the 16th day of September, 1920, Denman Lumber Company, replying to the letters of the 13th and 14th, above copied, wrote appellant the following letter:

"Mt. Pleasant, Tex., Sept. 16, 1920.

"Mr. J. I. Laird, Continental Lumber Company Houston, Texas.—Gentlemen: Re to your acknowledgment 5778. We note following discrepancies: On the 1/5, 1/8, 1/2 B&B finish and the ceiling, you failed to instruct mill that

all this was to be "long on 14 and 16 ft. Please so instruct them in accordance with order given your Mr. Bratton and oblige.

"Please add to order following:
100 Ft. 2/6 S4S to 20B&B finish
1000 " 2/8 " " " "
1000 " 2/12 " " " "
"Yours truly,     Denman Lumber Co."

On the 18th day of September, 1920, appellant replied to appellee's letter of the 16th as follows:

"Sept. 18, 1920.
"File 5788.

"Denman Lumber Co., Mt. Pleasant, Texas.— Gentlemen: Immediately answering your valued. letter of the 16th inst. regarding our above-numbered order, calling for three cars of stock, we note you desire the finished stock to be loaded heavily 14 and 16. We did not put this notation on our confirmation copy due to the fact that our stock naturally runs heavy to these lengths. However we are today writing our mill, giving them these instructions. We are sure that material will be loaded strictly in accordance with your wishes.

"Regarding the 2x6 and 2x8 and 2x12 B&B finish, we are unable to supply you with this material, therefore are not quoting. We regret very much we are unable to furnish this stock.

"Again thanking you for this business and assuring you same will receive our best attention, we remain,

"Yours very truly,
"Continental Lumber Company."

Appellant insists that the judgment of the court should be reversed because there was no evidence to sustain the same, in that:

First. "At the time the Continental Lumber Company wrote and mailed its letters of September 13th and 14th, it did not know that Bratton had made any contract with the appellee for the sale of the lumber involved in this suit, as neither the order sent by Bratton under date of September 10, 1920, nor its agreement to pay Bratton a commission upon orders sent it and shipped by it, gave or imported to it any knowledge that such contract had been made." Second, that, even if the Continental Lumber Company, at the time it wrote and mailed its letters on the 13th and 14th, knew that Bratton had made a contract with appellee to sell it the lumber described in the order, such letters were not a ratification of such contract, as they omitted a material part of the contract, namely, the provision that the finish, ceiling, and siding were to be shipped heavy on 14 and 16 feet; that the contract as finally made was made at Houston by its letter of the 18th day of September, 1920, which was mailed to appellee from Houston.

[1] We cannot agree to the contention made by appellant. We think the fact that appellant had agreed with Bratton to pay him a commission on all orders sent in by him, and thereafter filed by it, and the receipt of the order for appellee sent in by Bratton after said agreement was made, gave appellant knowledge of all the material facts relative to this contract made by Bratton with appellee, and clearly disclosed to it that such contract was made. We do not understand how any other conclusion can be reasonably reached. As already stated, Bratton had been authorized by appellant to take orders from prospective purchasers and send them in to appellant; that several such orders had been received by appellant from Bratton and had been filed by it. Appellant must have understood when it received appellee's order, through Bratton, that Bratton had contracted with appellee to sell it the bill of lumber described in the order, subject to the ratification or confirmation of appellant. Indeed, we think all of its letters clearly indicate that it did so understand. With knowledge of the fact that Bratton was taking orders in its behalf, appellant received appellee's order, and after such receipt wrote the letters hereinbefore set out, in which it refers to Bratton as "our Mr. W. H. Bratton," and therein and thereby thanks appellee for the order.

We think there was ample evidence to support, if not to compel, a finding that Bratton did contract to sell appellee the lumber described in the order sent to appellant, and that after appellant had full knowledge of all the material facts relative to the making of such contract, it had ratified and confirmed the same. Black's Law Dictionary, defining the words "confirm" and "ratify"; Webster's New International Dictionary, defining the same words; Westinghouse Electric Mfg. Co. v. Troell, 30 Tex. Civ. App. 200, 70 S. W. 324.

[2] Appellant knew that Bratton was not the agent of appellee, and to the contrary knew that he was making such sale to appellee as a broker for a commission, which it had conditionally agreed to pay him for taking and sending the order to it.

"In every contract of sale, in which there is an intermediary or third person, who acts as seller, or representative of a seller, and agrees with the buyer as to terms, subject-matter, and price, and then forwards this agreement to a dealer who fills the order according to its terms as received from such third person, knowing at the time that such third person is not agent of the buyer and in no wise connected with the buyer, by filling said order confirms, ratifies, and sanctions the contract, which is in law a ratification of it, and such ratification relates back to the time and place where the order was taken; and especially is this true when (1) the seller has solicited orders from such third person and agreed to pay him a commission; (2) had so filled orders before; and (3) paid the third person a commission on the particular sale in question. It is immaterial whether you call it 'adopted,' 'approved,' 'confirmed,' or 'ratified.' "

[3, 4] That appellant furnished Bratton a list of the kind and quality of lumber it had for sale; a list of the prices at which he might offer it to prospective purchasers, and the terms and conditions upon which he

should offer the same, is not disputed. Nor is it disputed that appellant had agreed with Bratton that it would pay him a commission on every order obtained for it, if the same was accepted and the lumber called for therein was shipped. What, under these circumstances, did appellant expect Bratton to do? Is it not evident that it expected him to negotiate a sale of lumber at the prices and upon the terms it had furnished him? And is it not evident from the order sent in for appellee, that he did just what was expected of him? How then can it be said appellant was not fully informed that Bratton had made a contract with appellee to sell it the lumber at the prices and upon the terms set out in the order?

The rule announced is supported by the following authorities: Story's Conflict of Laws, vol. 1, p. 385; Railway Co. v. Chandler, 51 Tex. 420; Kempner v. Rosenthalz, 81 Tex. 16, 16 S. W. 639; Elliott's Contracts, par. 277; 31 Cyc. p. 1283; Cummer Mfg. Co. v. Kellam (Tex. Civ. App.) 203 S. W. 463.

"One may ratify the acts of another purporting to be made on his behalf, whether that other is his agent exceeding his authority or no agent at all." Ramsay v. Miller, 202 N. Y. 72, 95 N. E. 35.

"Ratification presupposes that the party acting had no previous authority to do the act or make the contract. * * * Ratification is equivalent to previous authority." Simpson's Contracts, pp. 1009 and 1010.

"The equitable doctrine of relation applies; that is, that ratification relates back to the date of the contract between the agent and the third party." Id.

"And the contract will be considered as made at the place where the agent and the third person made it." Id. 1011.

See, also, Simpkin's Contracts, p. 171; Re Insurance Co. of Pennsylvania (D. C.) 22 Fed. 113; Evans v. McKay (Tex. Civ. App.) 212 S. W. 688; 2 Corpus Juris, p. 467; Gallup v. Liberty County, 57 Tex. Civ. App. 175, 122 S. W. 291.

"We do not think there is much room for controversy as to the law upon these issues if the facts relative thereto be shown beyond controversy. A broker is the agent of the seller. An agent cannot purchase the property of his principal for himself, either directly or indirectly. He cannot be both buyer and seller." Texas Brokerage Co. v. John Barkley & Co., 60 Tex. Civ. App. 466, 128 S. W. 431.

"So if a broker assumes to act for another without authority, * * * there must ordinarily be a ratification by the principal, else he is not bound thereby. In such case the principal may elect whether to ratify or repudiate the transaction, and he is bound by the election so made." 9 Corpus Juris, 532.

"Effect of ratification. A transaction negotiated by a broker who assumes, without authority, to act for another * * * relates back and becomes binding on the latter, to the same extent as if originally authorized." 9 Corpus Juris, 534.

There is no merit in appellant's contention that by its letters of the 13th and 14th of September it had not ratified the contract made by Bratton with appellee, in that no mention was made in either of them of the words, "Ship, finish, ceiling and siding heavy on 14 and 16 feet," which were in the order sent in by Bratton, and that the said contract was not accepted in its entirety until it wrote and mailed its letter of the 18th of September at Houston. It is evident from the letters passed between the parties that appellant intended by its letters of the 13th and 14th to close the contract sent in by Bratton without change or alteration, and that the omission of the words above quoted was unintentional on the part of appellant. For, in its letter of the 13th, appellant requested appellee to carefully check the copy of the contract enclosed, and, if found incorrect, to advise it at once; and upon receipt of said letter appellee wrote and called appellant's attention to the aforesaid omission, and in reply appellant in its letter of the 18th said:

"We note you desire the finished stock to be loaded heavily 14 and 16 feet. We did not put this notation on our confirmation copy, due to the fact that our stock naturally runs heavy to these lengths. However, we are today writing our mill, giving them these instructions. We are sure that material will be loaded strictly in accordance with your wishes."

If by the letters of the 13th and 14th, written and mailed at Houston, appellant could have ratified the contract so as to make it relate back to the time and place, when and where it was made by Bratton, why could not the letter of the 18th have the same effect. No such reason is suggested by appellant, and we are unable to imagine one.

Upon trial, Lynch Davidson, president of Lynch Davidson Lumber Company, was asked by counsel for appellant the following question:

"Now, if Mr. Bratton were a broker, and he sent in an order for lumber to be shipped to the Denman Lumber Company, state whether or not you treated this order simply as if coming from the Denman Lumber Company itself?"

If the witness had been permitted to answer, it would have been as follows:

"If I treated it as coming from the Denman Lumber Company itself, we would just treat it as an offer."

[5, 6] The court refused to admit the answer. Appellant now contends that the court committed reversible error in such refusal. We overrule the contention. The suggested answer of the witness was not responsive to the question propounded, nor was such answer pertinent or material to any issue involved in the case.

The undisputed evidence shows that Bratton was a broker, and that he sent in the

order involved in this cause. No doubt counsel expected that the witness would testify, if permitted to do so, that he considered the order sent in as coming from the Denman Lumber Company itself. However, the bill of exception reserved, complaining of the action of the court in excluding the answer of the witness, shows that the witness declined to so answer, and gave an evasive answer, based upon a hypothesis not presented by the question nor shown to exist by any evidence in the case, and which is shown by the undisputed facts not to have existed.

We also think the testimony was properly excluded because the answer sought was but an expression of the witness as to what construction he alone would place upon the written order, which we think constitutes a contract. It is well settled that:

"The construction of a written instrument is a function of the judge. A witness, therefore, will not be allowed to intrude upon the province of the court by stating his conclusion as to its significance, in terms of what he understood by it; what it, as he diagnoses the matter, covers, or the like"—citing Texas cases. Chamberlayne, Evidence, vol. 3, par. 2363; Hamilton v. McAuley, 27 Tex. Civ. App. 256, 65 S. W. 205; Huff v. Crawford, 89 Tex. 214, 34 S. W. 606; Shifflet v. Morelle, 68 Tex. 382, 4 S. W. 843.

"A witness will not usually be allowed to say what, in his opinion, a contract means." Id. par. 2365.

Having reached the conclusions above expressed, the judgment of the trial court is affirmed.

Affirmed