In the Matter of the Application of HUDSON-HARLEM VALLEY TITLE AND MORTGAGE COMPANY, Petitioner, for a Mandamus Order against WILLIAM R. WHITE, Superintendent of Banks of the State of New York, Defendant, and TITLE GUARANTEE AND TRUST COMPANY, Impleaded Defendant.*

Supreme Court, Special Term, Albany County, February 3, 1937.

* See 251 App. Div. 1.

*Olvany, Eisner & Donnelly* [*James F. Donnelly, Ellis J. Staley* and *Walter J. Mc Nichols* of counsel], for the petitioner.

*James T. McDonald, Special Assistant Attorney-General,* for the defendant William R. White, Superintendent of Banks of the State of New York.

*Milbank, Tweed, Hope & Webb* [*A. Donald MacKinnon* of counsel] and *Samuel E. Aronowitz,* for the impleaded defendant Title Guarantee and Trust Company.

BERGAN, J. The charter granted by the Legislature to the defendant Title Guarantee and Trust Company under its original name, German-American Loan and Trust Company of New York, expressly reserved the right thereafter to revise or limit the corporate powers conferred (Laws of 1882, chap. 392, § 16). When the scope of corporate powers was broadened the following year, the reservation nevertheless continued, since the act of 1883 (Chap. 367) amended only sections 2 and 9 and did not affect section 16. Neither act limits the place of exercise of the powers conferred. Unless the Legislature be deemed subsequently to have exercised the reserved right to " repeal, alter or modify " the grant of corporate power in respect of the place of doing business, the corporation retained the power to exercise its corporate functions anywhere in the State. (*Merrick* v. *Van Santvoord,* 34 N. Y. 208, 221.) These powers are continued in the present general statute, which provides that specially chartered trust companies shall be subject to such provisions of the general statute " as are not inconsistent with the special laws " relating to such specially chartered companies (Banking Law, § 187).

Concededly its powers as a trust company were restricted by section 195 of the Banking Law, as the section read prior to May 16, 1934, to its principal place of business, or with the approval of the Superintendent of Banks, to branch offices in the city in which it had its principal place of business. This section was somewhat liberalized by chapter 666 of the Laws of 1934 in respect

of the places in which trust company functions might be exercised in branches within a banking district or in a city not entirely within one banking district. The Legislature, accordingly, must be said by this section to have exercised its expressly reserved power to alter or modify the charter of the Title Guarantee and Trust Company by imposing limitations upon the place of exercise of trust company functions. Such functions are clearly within the scope of the "usual business" of a trust company, and a modification of the charter in this respect will result from necessary and inescapable implication.

The title insurance business of the company, however, is not the usual business of a trust company. Except by special charter grants, antedating the present statute, the business of insuring titles may not presently or hereafter be exercised by trust companies. (Banking Law, § 186.) "Usual does not necessarily mean *entire* or *only*." (*Neill* v. *United Friends*, 149 N. Y. 430.) As employed in the statute under consideration I think "usual business" relates to the ordinary business of a trust company rather than to additional functions of title insurance granted by a special statute, and not intended to be exercised under the present general policy of the State by trust companies in the absence of an express right lawfully to possess or exercise such powers. (Banking Law, § 186.)

Moreover, the territorial limitation upon the exercise of the usual business of a trust company imposed by section 195 of the Banking Law seems to find its reason in the general policy of the State in reference to banking business and corporations subject to the Banking Law, among other things, "to eliminate unsound and destructive competition." (§ 10-a.) Read in connection with paragraph b of subdivision 1 of section 195, the scheme of the statute to impose restrictions upon the territory in which branches of trust companies may be established is apparent. The purpose is to restrict territorial competition among trust companies in their usual, or trust company, business. The policy has no rational relationship to title insurance business.

The use of the word "usual" is suggestive of limitation in the scope of the territorial prohibition, and it would seem that it must be construed as relating only to trust company business. Without the word "usual" a narrower construction of the statute would be indicated. The use of this word seems to negative the inclusion of special or particular functions outside of the scope of the purposes of the Banking Law. I think the Legislature did not intend to include all business of a trust company which might lawfully do

other kinds of business, but only its ordinary business as a trust company.

The statute in its application to the title insurance business of the Title Guarantee and Trust Company is not so entirely free from ambiguity that some consideration may not be given to the interpretation placed upon it by the Superintendent of Banks as the executive officer charged with the duty of enforcement. (Banking Law, § 10.) The present Superintendent does not construe the maintenance of the title insurance office of the Title Guarantee and Trust Company as a violation of the provisions of section 195. (See upon this subject generally, *Matter of W. S. A. & P. R. R. Co.*, 115 N. Y. 442; *Easton* v. *Pickersgill*, 55 id. 310; *People ex rel. Williams* v. *Dayton*, Id. 367; *City of New York* v. *New York City R. Co.*, 193 id. 543; *Bullock* v. *Cooley*, 225 id. 566; *Power* v. *Village of Athens*, 99 id. 592; *Matter of Lawrence-Cedarhurst Bank*, 247 App. Div. 528; *Grimmer* v. *Tenement House Dept.*, 205 N. Y. 549.)

The predecessors in office of the present Superintendent are presumed to have had knowledge of the continued maintenance of another title insurance office by the Title Guarantee and Trust Company for many years in a place other than its principal place of business, notwithstanding the general provisions of section 195, which, prior to the amendment of 1934 as well as after, prohibited the performance of " usual business " of trust companies elsewhere than at the principal place of business with the exceptions unrelated to the office in question. This office for title insurance business was outside the city in which the principal place of business was located and was outside the banking district when the district was established in 1934. While the correspondence of his predecessors referred to in the Superintendent's answering affidavit is not disclosed, it must be assumed that the branch for the purpose of transaction of title insurance business was maintained with their acquiescence, and hence was not treated by them as a violation of the statute.

The motion for a peremptory order of mandamus is denied, without costs.