(41 App. Div. 126.)

WAGNER et al. v. MALLORY et al.

(Supreme Court, Appellate Division, Fourth Department. May 24, 1899.)

1. DEED—CONSTRUCTION—PROPERTY CONVEYED.

Plaintiffs sought to restrain defendants from developing certain lands and
appropriating the oil therein. The lands had belonged to M., who con-
veyed an undivided interest, and transferred to grantees a right to drill
for oil on the portion retained by him, reserving a royalty therein. He
afterwards sold the remainder of his interest in the land, subject to the
oil lease, of which he finally became the assignee. On his death he left
his property to devisees. They conveyed to complainants by a deed re-
citing that it was their intention to convey all lands and premises own-
ed by them, and in which they had an interest. *Held*, that the con-
veyance passed no rights under the oil lease; it being a mere incorporeal
right, which the conveyance did not embrace.

2. LICENSES—ABANDONMENT.

A failure of the licensee, under a license purporting to grant the right to
produce oil from lands, to exercise the right for 20 years, may be consid-
ered an abandonment thereof.

Appeal from judgment on report of referee.

Action by Martin W. Wagner and another against Lewis E. Mal-
lory and others. From a judgment entered on report of a referee,
dismissing the complaint, plaintiffs appeal. Affirmed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

Alexander Wentworth, for appellants.

F. B. Church, for respondents.

SPRING, J.   On the 2d day of October, 1877, one Job Moses owned in fee the lands and premises described in the complaint.   On that day he conveyed an undivided one-half thereof to Samuel Harsh and Peter Schreiber, and at the same time executed and delivered to said vendees an instrument transferring to them the right to excavate and drill for petroleum, for the period of 40 years, on the undivided one-half of the lands retained by him; reserving, however, a royalty of one-sixteenth in the oil or petroleum produced.   July 2, 1878, Harsh and Schreiber conveyed to Gilfillan and others the lands acquired from Moses; at the same time assigning and transferring to these grantees their interest in the oil lease, so called.   Subsequently, in 1882, an action of partition of the lands was commenced by Moses, and the lands in question set apart in severalty to him,—subject, however, to the oil lease before mentioned.   By the judgment, which corresponded with the stipulation of the parties, adjusting their rights, Moses was to have one-eighth of the oil produced, and the lease was to be operative and effectual, only upon the lands apportioned to him in the partition action.  ·  After the judgment in the partition action, on the 11th day of October, 1882, Moses entered into a written agreement with one John S. Robinson to sell and convey the lands described in the complaint.   The said agreement con·tained the following clause:

"It is further understood that party of the first part reserves the oil, except one-eighth royalty, as long as a certain lease runs, that first party gave to Samuel Harsh and Peter Schreiber."

Robinson went into possession of the land as covenanted in the agreement, paid the purchase price, and in August, 1885, obtained from Moses a deed of the premises, in compliance with the written agreement, containing the reference to the lease substantially like that in the agreement.   Two years after the agreement between Moses and Robinson, on the 21st day of October, 1884, the vendees, Harsh and Schreiber, assigned and transferred all their right and title in this oil lease to Alexander Wentworth, which assignment was not recorded until December 14, 1888, and the original lease was never recorded.   On the 26th of November, 1886, Wentworth assigned this lease to Moses.   Moses died in 1887, leaving a last will and testament devising his property to his widow and children. October 2, 1887, these devisees conveyed by quitclaim deed several thousand acres of land to the plaintiffs in this action, describing separately and definitely the lands so conveyed.   This description did not include the lands in question, and Moses confessedly did not own these lands at the time of his death.   Said deed, however, contains a clause which, the plaintiffs contend, vested in them the title to this oil lease, and the right to the oil or petroleum under the surface of this land.   The clause is as follows:

"It is the intent hereby to convey to the parties of the second part all the lands and premises owned by the parties of the first part, or in which they have any interest, lying or being in the said town of Carrollton and the said town of Red House, whether the same are particularly described or not."

In the fall of 1896 Robinson's title passed to the defendants in this action, and a lease purporting to grant to the vendee the right to mine and produce petroleum and natural gas from said lands. Up to this time no effort had been made by any one to test the land for oil purposes, but in the fall of 1896 the defendants entered upon the premises and drilled a well, and the territory proved to be valuable for its oil production. This action was brought by the plaintiffs to restrain the defendants from developing the lands and appropriating the oil.

The oil in the ground was a component part of the real estate. Williamson v. Jones (W. Va.) 19 S. E. 436; Wilson v. Youst (W. Va.) 28 S. E. 780. It was like a coal mine, or a mine of other mineral. The oil lease from Moses to Harsh and Schreiber gave them the right to go upon these premises and develop the oil contained therein. After the oil was severed from the freehold, it became personal property, and would pass to the lessees under the instrument from Moses. While the oil remained in the ground, the so-called lessees possessed an intangible property right therein. Their contract was in the nature of a license, until consummated by the extraction and separation of the oil. Funk v. Haldeman, 53 Pa. St. 229; Barnhart v. Lockwood, 152 Pa. St. 82, 25 Atl. 237; Oil Co. v. Fretts, 152 Pa. St. 451, 25 Atl. 732; Shepherd v. Oil Co., 38 Hun, 37; chapter 372, Laws 1883. The vendees' right, however, under their lease, is difficult to define. It partakes of the characteristics of an incorporeal hereditament, except the definiteness of its tenure prevents it being technically within that term. This instrument was assigned to Moses after he had parted with the title of the land to the defendants' grantors. There was no union of the right to bore for oil with the fee of the premises. His right under this oil lease was the same as that of Harsh and Schreiber and Wentworth,—a right disconnected with the legal title to the land. The instrument by which the plaintiffs acquired title was a deed conveying real estate and the hereditaments inseparably connected therewith. It only purports to convey, by the sweeping provision relied upon, "lands and premises." There is no reference to this oil lease or license. The fee of these lands was not in the Moses devisees. They, at best, merely possessed the privilege to go upon the land and extract the oil. This was a mere incorporeal right, and of the nature of personal property; and it would ordinarily pass to the executors, instead of to the devisees. It would be an unwarranted extension of this grant to embrace within it a right of this kind, upon lands absolutely owned by a stranger, and not described or alluded to in the conveyance at all. The omnium gatherum clause in the deed under which plaintiffs claim title was designed to convey whatever bore the attributes of land, but not personal property. Notes which might have been a vendor's lien upon these premises would not pass under this wholesale provision. Moses did not reserve the right to the oil absolutely in himself. He had grant-

ed to Harsh and Schreiber the right to remove the oil. The instrument by which that right passed still possessed apparent vitality when he conveyed to Robinson; so he made his conveyance subject to that instrument. He did not retain in himself any rights independent of that oil lease. He simply notified his grantees that this oil lease was an uncanceled instrument, and whatever it vested in or transferred to the lessees still remained a burden or servitude upon the estate conveyed. If it was valid, he protected himself against it. While the language may admit of an unqualified reservation of the oil, yet, when considered in view of the transfer to Harsh and Schreiber, with the specific mention of that lease or privilege, with an explicit curtailment of the life of the so-called reservation to the termination of the lease, the deduction seems patent. There was no intent to keep in Moses any interest in the oil. It was necessary for him to guard against warranting and defending an unqualified title in fee, with this instrument outstanding, and that he insured himself against. He had no other purpose. He did not reserve the oil right in himself, and still seek to keep intact the Harsh and Schreiber grant. If so, why make reference to the outstanding grant, or make the expiration of his reservation coincident with the other instrument? Whether this oil lease still retains force and vitality is a serious question. No possession was given, except for the purpose of exploration for petroleum. The parties evidently contemplated an early development of the territory for that purpose. The grantor possessed a valuable interest, as he was to receive a proportion of the oil, if discovered, and owned the fee of the land. Yet for nearly 20 years no attempt was made to experiment for oil. This protracted quiescent attitude of the lessees may well be considered to be an abandonment of the grant, as its only purpose was for the production of petroleum. Crawford v. Ritchey, 43 W. Va. 252, 27 S. E. 220; Oil Co. v. Fretts, supra.

The judgment is affirmed, with costs. All concur.