## DARROW v. BUSH et al.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE—LACHES.
    Where a party seeking to enforce specific performance is guilty of unreasonable delay, equitable relief will be denied, although the lapse of time may not be sufficient to bring the case within the statute of limitations.

2. SAME—PERFORMANCE BY PLAINTIFF—DELAY.

Equity will not decree specific performance of a contract for the purchase of land executed 25 years prior to the bringing of the action, where the plaintiff and his assignors, after paying one-third of the purchase money and one year's taxes, practically abandoned their rights under it, and later declined to assert such rights, until after the land became suddenly valuable, because of the discovery of oil therein.

Appeal from equity term, Cattaraugus county.

Action by Adelbert E. Darrow against John W. Bush and others. From a judgment for the defendants, plaintiff appeals. Affirmed.

On the 1st day of April, 1871, the defendants Dexter P. Rumsey and Bronson C. Rumsey, together with Myron P. Bush and George Howard, now deceased, entered into a written agreement with one Ellen Dougherty for the sale of 57 acres of land situate in the township of Carrollton, Cattaraugus county, N. Y., the purchase price thereof being $693.60, payable in six equal annual payments, with interest. At the time she made this purchase the vendee owned a farm of 40 acres adjoining the lands embraced in the contract, upon which she and her family resided. The 57 acres were then supposed to be of little value aside from the hemlock timber standing thereon, and this timber was removed shortly after the purchase, and a portion of the cleared land was burned over and seeded. A wire fence was also constructed along the road, but it was afterwards broken down, and cattle were permitted to run onto the premises from the highway. The only payments ever made upon the contract were $180 on the 6th day of July, 1871, and a road tax of $63.16 on the 1st day of October, 1873. In 1880, Ellen Dougherty and her family left the premises, and went to Salamanca. The 40 acres were subsequently occupied by various tenants, who took wood from, and pastured cattle upon, the 57 acres, although informed by Mrs. Dougherty that she did not claim any title thereto. She, however, on the 1st day of May, 1882, assigned whatever interest she had in the contract to one Charles Gallagher; and on the 6th day of October, 1894, Gallagher's interest therein passed, by general assignment, to Oliver S. Vreeland, who subsequently, and on the 18th day of June, 1896, transferred the same to the plaintiff. While Gallagher was in possession of the premises, he sold the 40-acre piece to a man by the name of Ross, who entered into the occupation thereof, and negotiated with Gallagher for the purchase of the 57 acres also. While these negotiations were pending, some letters were written by both Gallagher and Ross to Rumsey & Co., the vendors, containing propositions to purchase the vendors' interest, and thereby perfect Ross' title under the contract. This correspondence finally resulted in an offer from Rumsey & Co., on the 13th day of October, 1891, to take $500, and give a deed of the premises. This proposition was, however, neither accepted nor noticed; and in November, 1894, the vendors brought suit to foreclose their contract, and the premises embraced therein were, on the 15th day of June, 1895, sold by the sheriff in the foreclosure action to the defendants John W. Bush and Dexter P. Rumsey. These premises were situate in what is known as "Chipmunk Valley," in which valley oil was discovered in the year 1889, and in 1896 it was also discovered in considerable quantities upon the 57-acre piece, in consequence of which the value of lands in that locality was very materially enhanced. Thereafter, and on the 14th day of July, 1896, the plaintiff tendered the amount due upon his contract, and demanded a deed of the premises. The tender and demand were refused, and upon the following day this action was commenced to enforce a specific performance of the contract.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

J. H. Waring, for appellant.

F. L. Eaton, Ansley Wilcox, and Charles S. Cary, for respondents.

ADAMS, J. Upon the trial of this action, the plaintiff's complaint was dismissed upon the merits, and the learned counsel for the re-

spondents now insist that there are several distinct grounds upon which the decision of the trial court can be sustained. After giving to this contention the consideration it is entitled to receive, we have concluded to affirm the judgment appealed from, and to rest our decision solely upon the ground of the plaintiff's laches in resorting to the relief sought in this action, without determining the various other questions discussed upon the argument and in the briefs of counsel.

It is a familiar rule of equity jurisprudence that the granting or withholding specific performance is a matter entirely within the discretion of the court, and that when a party invokes such a remedy he must, in order to entitle himself to it, show that, in the circumstances of his particular case, it is just and equitable. Story, Eq. Jur. §§ 161, 742, 776; Day v. Hunt, 112 N. Y. 191, 19 N. E. 414; Conger v. Railroad Co., 120 N. Y. 29, 23 N. E. 983; Miles v. Iron Co., 125 N. Y. 294, 26 N. E. 261. In the case now before us it seems quite clear that the plaintiff has fallen far short of the standard established by the rule just adverted to. By his purchase of the contract in question he acquired no better or other right than was possessed by his assignor; for he took it subject to all the equities existing between the original vendors and vendee, and occupies precisely the same position the vendee would if the contract had never been assigned. This being the case, it will be profitable to indulge in a brief survey of the situation.

It appears that the contract under consideration was executed some 25 years prior to the bringing of this action; that, although the vendee assumed to pay the purchase price of the lands therein mentioned in six equal annual payments, she failed to meet her engagement in that regard; that while in possession of the lands contracted for she stripped them of the timber standing thereon, which at the time was supposed to constitute their chief value; that she subsequently removed from, and virtually abandoned, the premises, although before doing so she assumed to transfer the contract for the purchase thereof. It also appears that the vendee by her oral, and her transferees by their written, declarations, repeatedly admitted that whatever interest had been acquired under the contract was practically forfeited, and it is a fair and reasonable presumption that no attempt would ever have been made to enforce its performance had not the lands embraced therein become suddenly valuable by reason of the discovery of large deposits of oil beneath their surface; for it seems that as late as June 17, 1896, Gallagher, whose assignee was then the owner of the contract, when asked by a representative of the vendors whether he wanted to pay up the amount due upon the contract and take a deed of the premises, replied, "I think I will wait until they get a well down." Thus it will be seen that only about one-third of the purchase price of the premises has been paid, and that during a period of about 23 years neither the vendee nor her transferees have made the slightest attempt to preserve whatever rights were acquired under the contract; and that consequently, were it not for the claim that there had been a recognition of such rights by the vendors, it would prob-

ably be conceded that they were absolutely barred by the lapse of time. In making this assertion, we do not wish to be understood as assenting to the plaintiff's contention that the defendants have, by their own acts, deprived themselves of the right to invoke the statute. We do not pass upon, nor even consider, that question. What we do say, however, is that the statute of limitations does not affect the general principles of equity which declare that where a party, in attempting to enforce his rights, is guilty of unreasonable and inexcusable delay, he should be denied equitable relief, although the lapse of time may not be sufficient to bring the case within the operation of the statute; and, further, that this principle is peculiarly applicable to actions for specific performance. Peters v. Delaplaine, 49 N. Y. 362; Bank v. Thomson, 55 N. Y. 7; Buffalo & L. Land Co. v. Bellevue Land & Improvement Co., 32 App. Div. 529, 53 N. Y. Supp. 17; Hayes v. Nourse, 114 N. Y. 595, 22 N. E. 40.

In the case first above cited it was said by Church, C. J., that:

"The time within which actions may be brought for specific performance of contracts has not been extended by implication by the statute prescribing a time within which the action must in all cases be brought. The question still remains, and must be decided in each action, although brought within the statutory limit as to time, whether, under the peculiar circumstances, equity and good conscience require that the contract shall be specifically performed, or whether the party should be left to his remedy at law for the nonperformance."

And in the case last cited, Follett, C. J., thus states the rule:

"A vendee in an executory contract for the purchase of lands has not an absolute right to a specific performance of the contract, but such relief is granted or refused according to the circumstances of each case."

In the present instance, as we have seen, the laches of the plaintiff and those under whom he claims has been almost tantamount to an abandonment (Wagner v. Mallory, 41 App. Div. 126, 58 N. Y. Supp. 526); and during the long period of silence and inactivity which has intervened between the execution of the contract and any attempt to enforce the same a very material change of circumstances has taken place. The land which for 25 years lay neglected and virtually abandoned, save that the taxes thereon were paid, suddenly became possessed of great value because of the discovery of vast mineral wealth therein; and when this discovery was made, and it was established beyond all peradventure by experimental processes that such deposits did exist, the plaintiff demanded that a court of equity give him that which neither he nor his predecessors in interest had theretofore deemed of sufficient value to take the trouble to acquire, under the very liberal terms of their contract. Had this land been sold and purchased as oil land, the parties would, by reason of the fluctuating character of such property, have been under a special obligation to assert their rights actively and vigilantly. They would not have been permitted to await the event of investigations which were under way to ascertain the nature and extent of mineral deposits, because delay for such a purpose would be speculative in its nature. Benedict v. Lynch, 1 Johns. Ch. 377; Oil Co. v. Marbury, 91 U. S. 587, 593.

.And no good reason suggests itself to our mind why, after 25 years of .delay, the plaintiff should now be allowed to secure to himself the advantages resulting from a change in the situation which was not within the contemplation of either party when the contract was entered into; for delay, under such circumstances, is certainly as speculative as though the land had been purchased by reason of its proximity .to the oil belt, and in the expectation that it might ultimately prove valuable.

In considering the obligations which rest upon a vendee under conditions similar to those here presented, Mr. Pomeroy, in his work on Specific Performance, says:

"Where a vendee delays in completing the contract in order that he may speculate upon the chances of its proving to be an advantageous bargain, or that through a rise in value or other changes of circumstances his gain may be assured, and then, when he is thus certain that it will be a fortunate speculation, offers to perform, and sues to compel a conveyance by the vendor, a court of equity will refuse to grant him the remedy, even although he may have at an earlier day paid part of the purchase price. (3) And a rise in the value of the land during the interval will always be a fact of much weight in tending to show that the vendee's delay was speculative, and for the very purpose of awaiting such a turn favorable to himself." Pom. Spec. Perf. Cont. § 407.

It is undoubtedly the fact that the vendee's failure to assert her rights was, in the first instance, due either to neglect or indifference; but it is also true that, ultimately, it was owing to a specula-tive desire upon the part of her transferees to take advantage of the efforts which were being made to discover oil. In other words, as was said by Gallagher, they preferred to await the result of operations which were then in progress by the Devonian Oil Company, one of the defendants herein, before determining whether it would be for their advantage to pay the amount due upon the contract and take a deed; and, having delayed so long and for such purposes, we think it would be a violation of the principles of equity which are applicable to cases of this character to now decree specific performance. The judgment should be affirmed.

Judgment affirmed, with costs. All concur.