In the Matter of the Petition to Set Aside the Election of Directors of THE LAWRENCE-CEDARHURST BANK Held on January 14, 1936.*

CLINTON STREET REALTY CORPORATION, J. CARL SCHMUCK and JOHN A. RUTH, Petitioners, Respondents; THE LAWRENCE-CEDARHURST BANK, RAYMOND CHAUNCEY and Others, Appellants; UNION FREE SCHOOL DISTRICT No. 15 OF THE TOWN OF HEMPSTEAD and Another, Intervenors, Appellants.

Second Department, May 25, 1936.

*Revg. 158 Misc. 451.

*Edward S. Bentley,* for the appellant The Lawrence-Cedarhurst Bank.

*Kenneth M. Spence,* for the appellants Raymond Chauncey, Herbert Frankel, Robert L. Hamill, Milton S. Harrison, Douglas W. Morgan, Kenneth M. Spence and Harry Zalkin, and for the intervenors, appellants Union Free School District No. 15 of the Town of Hempstead and Lawrence-Cedarhurst Fire Department.

*Carl E. Peterson,* for the respondents.

DAVIS, J.   The proceeding is one brought under the provisions of section 25 of the General Corporation Law by three stockholders of The Lawrence-Cedarhurst Bank to set aside the election of directors at the annual meeting of stockholders on January 14, 1936.   That bank had a capital stock of $250,000 and its affairs were managed by seven directors when on March 4, 1933, a general bank holiday was declared.   The bank was closed by the Superintendent of Banks under the authority of statutes then in force. Examinations were made of the resources and liabilities and a present deficit of nearly $450,000 was shown.   This deficit exceeded the value of the stock by about $200,000.   It is not claimed that this condition was due to any actual dishonesty on the part of the officers and directors, but rather it came from poor business judgment and the unusual financial disturbance existing since 1929.

Pursuant to the authority given him by section 61 of the Banking Law, as amended on February 21, 1933, the Superintendent permitted the bank to reopen on May 18, 1933, under a plan which he approved.   This plan involved, in general, a change in the

number of directors to eleven; the payment to depositors of sixty per cent of their deposits in cash (except that it was provided that small depositors should be paid in full); the issuance to depositors of certificates representing the amount unpaid on their deposits, bearing three per cent interest, and a provision that the stockholders should receive no dividends until the certificates were fully paid. The certificate holders held a preliminary meeting, and this was followed on May fifteenth by a meeting of stockholders and certificate holders to elect directors. The statute provided that former officers and directors were eligible at such election; but only two were elected — the remaining directors being chosen from other stockholders and the certificate holders. One of the former directors was elected president.

Under the new management the bank seems to have been operated with a fair measure of success. Questions arose over the right of the certificate holders to vote at special and annual meetings thereafter. An interpretation of paragraph (e) of subdivision 2 of section 61 of the Banking Law was sought from the Superintendent of Banks; and he advised the bank that such right to vote at annual and special meetings was equal to that of stockholders until the certificates were paid. Accordingly by-laws were adopted containing such provisions, and the certificates issued had stamped on them, among other things, that the holder had the right to vote at such meetings of stockholders. All stockholders apparently had knowledge, actual or constructive, of these facts.

In January, 1934, at the stockholders' meeting, the certificate holders voted for directors proportionately with the stockholders, in person or by proxy. The individual petitioners participated in that meeting, voting certificates by proxy. The same procedure was followed in the January, 1935, meeting. In 1936, at the annual meeting, these same men who had voted proxies in the preceding two years nominated a ticket and raised objections that the right of certificate holders to vote was limited by the statute to the first organization meeting in May, 1933.

The votes of each class were recorded separately. Counting only the votes of stockholders, seven of the directors proposed by petitioners had a majority of about one hundred. Counting the votes of certificate holders, the eleven directors representing the present management had a wide margin.

Paragraph (e) of subdivision 2 of section 61 of the Banking Law is as follows: " Within sixty days after a bank or trust company has resumed business as provided in this subdivision of this section, there shall be called in accordance with its by-laws or as the Superintendent may direct a meeting of its stockholders and holders

of such certificates, who shall elect directors who shall succeed the former directors. The board of directors so elected shall elect officers who shall succeed the former officers. Former directors and officers shall be eligible at such elections. Each registered holder of such certificates shall be entitled to vote as though the unpaid principal amount of such certificates represented stock of the same par value."

Admittedly the language is obscure and ambiguous. We must consider the purpose of the Legislature in enacting this hastily prepared statute in a period of great emergency. Depositors were not permitted to withdraw their money except in limited amounts. The sum that remained, represented by certificates, furnished the actual capital of the reopened bank. The stock represented nothing but a liability. It would be natural, then, to intrust the management, in part at least, to those who were furnishing the capital — not alone at the first meeting but until the depositors had been fully paid; and not to turn back the management to those whose efforts had met with ill success. It was the interest of the depositors which must have been the chief concern of the Legislature. " Payment of the creditors is still the end to be attained, and resumption of business a means and nothing more." (*Doty* v. *Love*, 295 U. S. 64, 70.) Such statutory provisions are liberally construed, regardless of the particular words used. (*Weddell* v. *Ritchie*, 10 Ont. L. R. 5.) Paragraphs (f), (h) and (i) of the subdivision indicate the same purpose of clothing the certificate holders with power, for the capital stock is deemed in effect to include outstanding certificates; and after the certificates are paid in full with interest, or exchanged for stock, the Superintendent then determines whether the bank may resume business. At any time the Superintendent may retake possession of the bank and liquidate it, but the rights of the depositors as to priorities in payment are not affected.

There is a provision in paragraph (f) to the effect that the certificate holders have an option at any time to convert their certificates into stock. We attach no significance to that provision as related to the case presented here. While the bank remains in a critical condition, operating only by grace of the Superintendent, there will be no conversion of preferred three per cent certificates for worthless stock. The Legislature did not intend to impose such harsh terms as a condition to a right to vote during the period of stress. We reach the conclusion that the certificate holders had the right to vote at the meeting of stockholders on January 14, 1936.

Furthermore, there was an interpretation of the statute by the officer whose duty it was to enforce it and to regulate the right of those whom it concerned; and great weight will ordinarily be given to a construction by officers who are charged with the duties of enforcement. (*Grimmer* v. *Tenement House Department of City of New York*, 205 N. Y. 549; *Bullock* v. *Cooley*, 225 id. 566, 571.) The petitioners and all other stockholders acquiesced in this practical construction, assented to it and acted under it for nearly three years. It was made a part of the by-laws and thus constituted a contract between the stockholders. (*Matter of American Fibre Chair Seat Corp.*, 241 App. Div. 532; affd., 265 N. Y. 416.) It is too late for these petitioners to raise the question.

This statute superseded certain provisions of the General Corporation Law and the Stock Corporation Law in respect to voting and otherwise. In 1934 the Banking Board adopted a resolution suspending the provisions of law requiring the holding of stock of a bank as a qualification for the office of director " insofar as any such requirement may apply to any holder of a certificate of interest of one thousand dollars or more of such reorganized corporation," (See Legis. Doc. 1935, vol. 5, No. 24, p. 30) exercising the power given under sections 10-a and 10-b of the Banking Law (since renumbered 10-b and 10-c by Laws of 1935, chap. 57).

It follows that the order setting aside the election and granting other relief should be reversed on the law and the facts, with ten dollars costs and disbursements, and the petition dismissed, with ten dollars costs.

LAZANSKY, P. J., HAGARTY, CARSWELL and TAYLOR, JJ., concur.

Order reversed on the law and the facts, with ten dollars costs and disbursements, and the petition dismissed, with ten dollars costs.