THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. JOHN A. DILLIARD and Others, Defendants, Impleaded with LOUIS GOLD, WILLIAM O. SMITH and WILLIAM H. LYONS, Respondents.*

First Department, July 16, 1937.

* Affg. 163 Misc. 146.

*John T. Cahill* of counsel [*Lawrence S. Lesser, Robert S. Rubin* and *John P. Walsh* with him on the brief; *William Copeland Dodge, District Attorney*], for the appellant.

*Hyman D. Lehrich* of counsel [*Lehrich & Lehrich,* attorneys], for the respondent Louis Gold.

·*John Kadel* of counsel [*Basil O'Connor, Emanuel Schwartz* and *Samuel Silverman* with him on the brief; *Kadel, Van Kirk & Trencher,* attorneys], for the respondents William O. Smith and William H. Lyons.

COHN, J. Respondents were directors of the State Title and Mortgage Company. By an indictment filed by the grand jury of the county of New York on October 4, 1934, they are charged with a misdemeanor in failing to have had the company provide and maintain the statutory guaranty fund required by section 173 of the Insurance Law.

The important question presented on this appeal is whether section 173 of the Insurance Law, which became effective on April

4, 1929, immediately upon its signature by the Governor, and not by its language made expressly applicable to companies theretofore organized, had any application to title and mortgage guaranty companies, such as State Title and Mortgage Company, organized and functioning prior to the effective date of the statute.

The indictment contains two counts each of which charges a misdemeanor committed subsequent to October 5, 1932. The first count accuses defendants as directors of State Title and Mortgage Company, a title and mortgage guaranty corporation organized under article 5 of the Insurance Law, of the crime " of permitting, procuring and causing * * * such corporation to fail to maintain a proper guaranty fund as required by Section 173 of the Insurance Law." Such violation is made a misdemeanor by section 53 of the Insurance Law. The second count charges that defendants violated section 297 of the Penal Law in "wilfully omitting, as directors of a moneyed corporation, to perform a duty imposed upon them as such directors, by law," that is, to comply with the provisions of section 173 of the Insurance Law. At the time that State Title and Mortgage Company was incorporated, section 176 of the Insurance Law (Laws of 1909, chap. 33) was in force and effect. This section was expressly repealed by the Laws of 1929, chapter 290, section 2, which enacted section 173 of the Insurance Law.

Section 173 of the Insurance Law (Laws of 1929, chap. 290, § 2) provides as follows:

" § 173. Investment of capital and guaranty fund of a title and mortgage guaranty corporation. The minimum capital of every such corporation shall be invested in the same kind of securities as is required for the minimum capital of other insurance corporations incorporated under this chapter. Every such corporation shall invest a sum not less than two-thirds of its total paid-in capital in minimum capital investments, which investments shall be known as the ' guaranty fund,' and no such corporation shall issue any guaranty or policy of insurance until such sum has been so invested. Such funds shall be held for the security and payment of losses which may be incurred by reason of the contracts of guaranty or insurance outstanding, and shall not be subject to other liabilities of the corporation until after all obligations under its guaranty or insurance contracts have been met. If an increase of its capital stock is made by any such corporation, two-thirds of such increase shall be invested in accordance with this provision and added to the ' guaranty fund.' "

The minimum capital investments referred to are defined in section 16 of the Insurance Law as follows:

" 1. The cash capital of every domestic insurance corporation required to have a capital, to the extent of the minimum capital required by law, shall be invested and kept invested in the stocks or bonds of the United States or of this State, not estimated above their current market value, or in the bonds of a county or incorporated city in this State authorized to be issued by the Legislature, not estimated above their par value or their current market value, or in bonds and mortgages on improved unencumbered real property in this State worth fifty per centum more than the amount loaned thereon."

A bill of particulars served by the People alleged that the State Title and Mortgage Company was incorporated on March 15, 1927, with an authorized capital stock of $1,000,000, fully paid in on or before May 31, 1927; that it obtained a certificate of authority to do business from the Superintendent of Insurance on the latter date and that such certificate provided: " That not less than two-thirds of the amount of said capital stock has been set apart as a guaranty fund, and the same properly invested as required by statute; " that at the commencement of business on May 31, 1927, the company had on hand assets of $2,165,650; that the capital stock of the company was increased to $6,000,000 in September, 1927, and that it had on hand assets of $7,538,250. The People, in the bill of particulars, also stated that between October 5, 1932, and August 2, 1933, the only assets available for the guaranty fund were approximately $13,750 of first mortgage bonds; but the company had on hand assets in excess of $14,000,000.

The defendants contend that the indictment is fatally defective and that the demurrer thereto was properly sustained because (1) section 173 of the Insurance Law enacted in 1929 had no application to the State Title and Mortgage Company organized in 1927; (2) the indictment fails to allege facts constituting a violation of section 173 of the Insurance Law and (3) the second count of the indictment charges no crime. The People, on the other hand, urge that section 173 of the Insurance Law was intended to apply to State Title and Mortgage Company and that the indictment sufficiently alleges facts constituting a violation of section 173 of the Insurance Law and of section 297 of the Penal Law.

When the State Title and Mortgage Company was organized in 1927, the statutory requirements for the maintenance of a guaranty fund by a title guaranty company were set forth in section 176 of the Insurance Law. Under its provisions the minimum capital of $150,000, fixed by section 170 of the Insurance Law, was required to be invested in the specified securities stated in section 16, subdivision 1, of the Insurance Law, heretofore quoted.

Except to the extent of the $150,000, the guaranty fund provided for in the statute, comprising two-thirds of the authorized capital stock, might be invested in any securities in which the company might legally invest its capital. For example, the securities comprising such fund could be stocks, bonds or evidences of indebtedness of any solvent corporation incorporated under the laws of the United States or any State, or in such real estate as it was authorized to acquire and hold by the provisions of the Insurance Law. As appears from the bill of particulars, the company at all times mentioned in the indictment had its capital and surplus intact. The guaranty fund which it was required to have under section 176 of the Insurance Law which included the investment of $150,000 in minimum capital securities, was likewise unimpaired.

The indictment charges that subsequent to October 5, 1932, defendants violated the law in that they as directors of the company had failed to invest and hold as and for a guaranty fund at least two-thirds of the company's paid-in capital, namely, two-thirds of $6,000,000, in United States government bonds, New York State bonds, or in bonds of a county or city of the State or in bonds and mortgages on improved and unincumbered real estate in this State worth fifty per cent more than the amount loaned thereon. This duty, however, for the maintenance and investment of the guaranty fund in minimum capital investments only as commanded by section 173 of the Insurance Law, as distinguished from capital investments as provided by section 176 of the Insurance Law, did not arise until April 4, 1929, when the former section was enacted and became operative.

If we are to accept the construction of the statute urged by the People, then it was incumbent upon the directors of this corporation as well as of every other title and mortgage guaranty corporation upon the enactment of section 173 of the Insurance Law on April 4, 1929, to establish *eo instanti* the guaranty fund as required, by disposing of all securities which had theretofore made up the guaranty fund and acquiring the limited class of securities permitted for minimum capital requirements. Failure to comply on the very day, indeed at the very moment, that the statute became operative would make the directors of every such corporation liable to criminal prosecution for the commission of the misdemeanor now charged against these defendants.

We are of the opinion that section 173 of the Insurance Law applies only to corporations organized after the enactment of that statute and that its provisions have no retrospective application to corporations, such as the State Title and Mortgage Company, which had been theretofore organized.

When the State Title and Mortgage Company set up its guaranty fund in conformity with the then existing law (see certificate of authority issued by the Superintendent of Insurance on May 31, 1927), the company could not be affected by any later change in the statute unless such amendment in clear and explicit language indicated an intent to include corporations theretofore organized. No such language is found in section 173 of the Insurance Law. The general rule is that statutes are to be construed as prospective only and that it takes a clear expression of the legislative purpose to justify a retroactive application. (*Jacobus* v. *Colgate*, 217 N. Y. 235, 240; *Isola* v. *Weber*, 147 id. 329; *Dash* v. *Van Kleeck*, 7 Johns. 477; Endlich on the Interpretation of Statutes, §§ 271, 273.)

The pertinent rule is well stated in Endlich on the Interpretation of Statutes as follows (at p. 367): " It is chiefly where the enactment would prejudicially affect vested rights, or the legal character of past transactions, that the rule in question prevails. Every statute, it has been said, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect of transactions or considerations already past, must be presumed, out of respect to the Legislature, to be intended not to have a retrospective operation."

Furthermore, it was obviously the intent of the Legislature that section 173 of the Insurance Law should apply only to corporations thereafter organized. An analysis of the language of the statute itself makes this quite clear. The expressions " *shall* invest," " which investments *shall be* known as the guaranty fund " and " no such corporation *shall* issue any guaranty or policy of insurance until such sum has been so invested," all relate to the future and control the operations of companies thereafter to be organized.

This view is strengthened by an examination of section 170 of the Insurance Law which was amended at the same time, and where specific reference to corporations " heretofore organized " is made when the Legislature intended to embrace them. If the legislative intent were to make section 173 of the Insurance Law apply to mortgage guaranty companies theretofore organized, it would have been a comparatively simple matter to have used the words " heretofore or hereafter organized " after the words " every such corporation." The State Title and Mortgage Company, always functioning under the supervision of the Superintendent of Insurance, had made its capital investments as required by its charter and had complied with section 176 of the Insurance Law

by establishing the guaranty fund required by statute. Were it the purpose of the Legislature to impose upon this corporation the duty and obligation to convert the holdings in its guaranty fund into minimum capital investments as a condition of continuing its business, such intent could have and should have been unequivocally expressed in the amendatory act.

Moreover, no lapse of time was provided in the statute for compliance with provisions of section 173 of the Insurance Law. It took effect immediately on signature by the Governor on April 4, 1929. It is a grave question as to whether it was within the power of the Legislature to make unlawful the continued functioning of these corporations by radically changing the requirements for the guaranty fund investments without first providing a reasonable time within which they might convert their capital investments into minimum capital investments for the guaranty fund. In *People* v. *Wendel* (217 N. Y. 260) our Court of Appeals said (at p. 263): " If the Legislature had intended that the amendment to section 337 of the Public Health Law should apply to owners having property in cold storage at the time the amendment took effect, *it should have so declared and have provided a reasonable time thereafter for compliance with its provisions. (Sohn* v. *Waterson,* 17 Wall. 596; *Gilbert* v. *Ackerman,* 159 N. Y. 118; *Jaehne* v. *New York,* 128 U. S. 189.) " (Italics ours.)

Nor does the fact that no prosecution was had under the new act within five years after its enactment make the statute legal, if its failure to provide for a reasonable time within which persons subject to the amended statute might bring themselves into conformity with its requirement has rendered it illegal. " The constitutional validity of law is to be tested, not by what has been done under it, but by what may, by its authority, be done." (*Stuart* v. *Palmer,* 74 N. Y. 183, 188; *People ex rel. Alpha P. C. Co.* v. *Knapp,* 230 id. 48, 54.)

It is to be noted also that officials charged with the administration of the Insurance Law were of the view that section 173 of the Insurance Law did not apply retrospectively. The Attorney-General in 1934 in construing this very section ruled specifically that it had no application to corporations theretofore organized. Answering an inquiry of the Superintendent of Insurance, he said: " It is a general rule that a statute will not be construed to apply retrospectively unless its language, either expressly or by necessary implication, requires that it be so construed. Although the words ' of every corporation,' as used in section 173, are so general and broad as in their literal sense to comprehend existing cases, there

is nothing in the language of the statute to indicate that it was the intention of the Legislature that it apply retrospectively." (Opinions of Attorney-General [1934], p. 474.)

The State Superintendent of Insurance entertained the same view as to the effect of the language of section 173 of the Insurance Law, for under other provisions of that law he was specifically empowered and directed to take the necessary steps to liquidate an insurance company which had violated any law of the State or which was conducting its business in a manner hazardous to its policyholders, to its creditors or to the public. (§§ 39, 41, 42 [§ 63 repealed by Laws of 1932, chap. 191, § 1].) No such action was found necessary by the Superintendent of Insurance, at least from April 4, 1929, up to October 5, 1932. As is apparent from the bill of particulars, he permitted the company to operate the guaranty fund after April, 1929, in precisely the same manner as before the passage of section 173 of the Insurance Law. The law is well grounded that the long continued and uniform practice of the authorities charged with the administration of a statute of doubtful interpretation is entitled to considerable if not controlling weight and will not be disturbed except for cogent reasons. (*Louisville & N. R. R. Co.* v. *United States*, 282 U. S. 740; *Matter of W. S. A. & P. R. R. Co.*, 115 N. Y. 442, 447.)

The People contend that if section 173 applied only to corporations thereafter to be organized, all title guaranty corporations in existence prior thereto would be relieved of the requirement of maintaining any guaranty fund, as section 176 was specifically repealed by chapter 290 of the Laws of 1929. We do not believe that such is the effect of the repeal, for under section 95 of the General Construction Law section 173 of the Insurance Law is a continuation of the prior law and not a new enactment. (*Wahle-Phillips Co.* v. *Fitzgerald*, 225 N. Y. 137, 140.) Furthermore, though neither statute were in effect, the companies were still subject to the rigid supervision of the Superintendent of Insurance who, upon any impairment of capital beyond a margin of safety, or upon any willful violation of its charter could force a liquidation or a rehabilitation of the delinquent company. (Cf. Insurance Law, §§ 401, 403, added by Laws of 1932, chap. 191, in effect since March 15, 1932, which repealed § 63 of the Insurance Law.)

For the foregoing reasons, we reach the conclusion that the State Title and Mortgage Company, organized and incorporated in the year 1927, was not subject to the provisions of section 173 of the Insurance Law enacted in 1929. Since each count of the indictment is entirely predicated on an alleged violation of this section by these defendants as directors of the company, the indict-

ment is fatally defective. We hold that the court properly sustained the demurrers of these defendants to the indictment. In view of this determination, it is unnecessary to consider any of the other grounds urged by defendants in support of the demurrers.

The order appealed from should be affirmed.

MARTIN, P. J., UNTERMYER, DORE and CALLAHAN, JJ., concur.

Order unanimously affirmed.