**NORMANDIE OIL CORPORATION v. OIL TRADING CO., Inc.**

No. 11011.

Court of Civil Appeals of Texas. Galveston.

Oct. 17, 1940.

Rehearing Denied Jan. 30, 1941.

C. A. Leddy (of Fulbright, Crooker & Freeman), of Houston, Wm. N. Bonner, Virgil Childress, and Lawler, Wood & Childress, all of Houston, for appellant.

Sewell, Taylor, Morris & Connally, Ben G. Sewell, and J. Toll Underwood, all of Houston, and John S. Keith and Joseph W. Murphy, both of New York City, for appellee.

GRAVES, Justice.

This appeal is from a $19,437.51 judgment of the 55th District Court of Harris County entered upon a jury's verdict in response to special issues, as well as upon independent findings of the court itself from what it termed "the undisputed evidence", in favor of the appellee, a New York Corporation, and against the appellant, a Delaware corporation, with a permit to do business in Texas, as the money so determined by court and jury to be due the appellee as a broker's commission from the appellant for the former's having been the procuring cause of the sale of "the Krohn-oil-and-gas-lease" in the Conroe oil field in Montgomery County, Texas, by the Alpha Petroleum Company to the Tidewater Oil Company,

under an alleged verbal contract (both made and performed in New York State) for such service, of January, 1934, between the appellee, and the predecessors in obligation to pay therefor of the appellant.

The cause of action, so declared upon by and so matured into the appellee by that judgment, was based upon a sale that admittedly occurred on or about April 15, 1935, of such Krohn lease by the Alpha Petroleum Company to the Tidewater Oil Company for $900,000, $550,000 in cash, and the remaining $350,000 payable out of ¼ of ⅞ of the oil to be thereafter produced therefrom; the recovery so awarded it rested upon averments and consequent findings to the effect that the appellee's services to appellant's predecessors in obligation, together with its negotiations for them in that behalf, had been the procuring cause of the stated sale; that the Alpha Petroleum Company had thereafter conveyed all of its properties to the appellant, which had in consideration therefor assumed all the Alpha Company's liabilities, including the one to the appellee herein recovered for by it, and that thereafter the Alpha had been dissolved; and finally, that the individual defendants the appellee sued herein with the appellant had been officers and directors of the Alpha Company at the time of its recited dissolution.

The appellant, along with its codefendants, in addition to demurrers and denials, general and special, answered below by these, among other, special pleas:

"(1)   That plaintiff's claim for commission is void, because plaintiff was not a licensed real estate broker, as required by certain statutes of New York which declared void and unenforceable all contracts made and claims for commission asserted by an unlicensed real estate broker for services rendered in New York.

"(2)   That plaintiff, a foreign corporation, had engaged in business in Texas without a permit to do so, in violation of the statutes of Texas, and was prohibited by such statutes from maintaining this suit.

"(3)   That plaintiff was not the procuring cause of the sale of the Krohn lease by Alpha to Tide Water, on April 15, 1935, but that long after plaintiff's negotiations with Tide Water had terminated unsuccessfully, said sale was effected solely through the efforts of Alpha's general counsel, Wm. N. Bonner, as an emergency measure to raise funds for the settlement of a lawsuit which, as a result of a lis pendens notice thereof filed shortly theretofore, clouded the title to all of Alpha's oil properties in Texas; and that said attorney was paid a commission for such services.

"(4)   That any efforts made by plaintiff to sell the Krohn lease to Tide Water were made under and by virtue of a written contract between Alpha and plaintiff, which terminated on December 31, 1934, without any sale having been effected; that plaintiff had negotiated a contract, dated November 10, 1932, between Alpha and Tide Water, wherein Alpha had agreed to sell and Tide Water had agreed to buy the oil produced from Alpha's leases at Conroe during the period from January 1, 1933, to December 31, 1934, and Alpha had granted to Tide Water the right to purchase any of said leases, including the Krohn lease, at the highest price offered by another during said period; that by its said contract with plaintiff Alpha agreed in writing to pay plaintiff one cent per barrel on all oil sold thereunder and a commission of 2½ per cent on the sale price of any of said leases that might be sold to Tide Water during said period; that Alpha was willing to sell the Krohn lease for $1,300,000.00 and so informed plaintiff in the summer of 1934 while said contract was still in force, but the only offer ever obtained by plaintiff from Tide Water for the purchase of said lease was one for $850,000.00 payable half in cash and half in oil from said lease, which offer was made in the summer of 1934 and promptly rejected by Alpha; and that thereafter Alpha had no other dealings or negotiations with plaintiff regarding the sale of said lease."

The special issues and the jury's answers were as follows:

"No. 1.   Do you find from a preponderance of the evidence that George Frankel in the month of January, 1934, employed plaintiff to negotiate a sale of the Krohn lease to the Tidewater Oil Company?   Answer: 'Yes'.

"No. 1-A.   Do you find from a preponderance of the evidence that in so employing the plaintiff, George Frankel purported to act for the Alpha Petroleum Company?   Answer: 'Yes'.

"No. 2.   Do you find from a preponderance of the evidence that after George Frankel so employed plaintiff to negotiate for the sale of the Krohn lease to the Tide Water Oil Company, if you have so found, all of the officers and directors of Alpha

Petroleum Company, except——Friedman, were fully informed as to such employment? Answer: 'Yes'.

"No. 3. Do you find from a preponderance of the evidence that all of the officers and directors of the Alpha Petroleum Company, except——Friedman, after being so informed of the employment of plaintiff by George Frankel, if you have so found, acquiesced in and approved of such employment? Answer: 'Yes'.

"No. 4. Do you find from a preponderance of the evidence that after the officers and directors of the Alpha Petroleum Company, other than Friedman, were advised of such employment of plaintiff and its efforts and activities in negotiating such sale of the Krohn lease to the Tide Water Oil Company, if they were so advised, they gave plaintiff instructions in respect to negotiating the sale of said lease to said Tide Water Oil Company? Answer: 'Yes'.

"No. 5. Do you find from a preponderance of the evidence that the officers and directors of Alpha Petroleum Company, other than Friedman, knew of the efforts of plaintiff to negotiate the sale of the Krohn Lease to the Tide Water Oil Company? Answer: 'Yes'.

"No. 6. Do you find from a preponderance of the evidence that the defendant, Alpha Petroleum Company, acting by and through its officers and directors, other than Friedman, knowingly accepted the benefit of plaintiff's services, if any, in negotiating the sale of the Krohn Lease to the Tide Water Oil Company? Answer: 'Yes'.

"No. 7. Do you find from a preponderance of the evidence that the efforts, if any, on the part of plaintiff to sell the Krohn lease to the Tide Water Oil Company was the procuring cause of such sale? Answer: 'Yes'.

"No. 8. What do you find from a preponderance of the evidence was the reasonable cash market value in New York of the $350,000 oil payment due Alpha Petroleum Company by Tide Water Oil Company on April 15, 1935? Answer: '65%'.

"No. 9. What do you find from a preponderance of the evidence was the usual, customary and reasonable broker's commission in the City of New York during the years 1934 and 1935, for negotiating a sale of an oil lease substantially similar to the Krohn lease? Answer: '2½%'.

"No. 10. What do you find from a preponderance of the evidence was the usual, customary and reasonable broker's commission in the City of Houston, Texas, during the years 1934 and 1935 for negotiating a sale of an oil lease substantially similar to the Krohn lease? Answer: '2½%'.

"No. 11. Do you find from a preponderance of the evidence that the minds of George Frankel and Harvey Carter met in agreement, in the employment inquired about in Special Issue No. 1, if you have answered that Frankel did employ him, that a compensation should be paid to Carter's company other than the 2½% provided in the written contract of December 5, 1932? Answer: 'We do'.

"No. 11-A. What do you find from a preponderance of the evidence would be a fair and reasonable compensation for the services of the plaintiff, if any, upon sale of the property in controversy? Answer: '2½%'."

"Defendants' Specially Requested Issue No. 1.

"If you have answered Special Issue No. 1 in the affirmative, then you will answer the following question: Do you find from a preponderance of the evidence that subsequent to the offer of Tide Water Oil Company to purchase the Krohn lease for $800,000 or $850,000, as you may find the facts to be, George Frankel notified Harvey Carter, president of Oil Trading Company, that said lease was withdrawn from the market? Answer: 'No'.

"Defendants' Specially Requested Issue No. 2.

"Do you find from a preponderance of the evidence that the negotiations and efforts of Wm. N. Bonner were the procuring cause of the sale of the Conroe lease to the Tidewater Oil Company? Answer: 'No'.

"Defendants' Specially Requested Issue No. 3.

"Do you find from a preponderance of the evidence that from the date the Oil Trading Company began negotiations to sell the Krohn lease to the Tide Water Oil Company, a reasonable time had elapsed thereafter for it to effect a sale of said lease to Tide Water Oil Company before said lease was actually sold to said company? Answer: 'No'."

The appealed-from judgment was against appellant alone, because it had both acquired all the assets of and assumed all the liabilities of the Alpha Company (which, if not the alter ego in all matters

material here of the different members of the Frankel family, had been at least owned and controlled by them) prior to the Alpha's stated dissolution; wherefore, the Normandie only has prosecuted this appeal, and the undisputed facts thus make plain the implications of the quoted special issues and the answers thereto with reference to it, and to the contentions it makes upon this appeal.

In this court, as below, the appellant's main contentions are the four copied supra from its brief, together with many other subsidiary ones, along with a number of added objections of both substantive and procedural kinds.

Obviously, its two quoted pleas in bar of the whole suit against it stand at the threshold of appellate review; it concretes them into these two propositions:

"First. The alleged oral contract upon which this suit is based is void and unenforceable under the laws of New York, and this suit thereon cannot be maintained in Texas, because at the time said contract is claimed to have been made and performed sections 440, 440-a, 442-d, and 442-e of article 12-A of the Real Property Law of New York, Consol.Laws, c. 50, required any person who, for a commission, offered for sale or sold for another an estate or interest in real estate, to first procure a license as a real estate broker, and declared void and unenforceable all claims for commission by any person not so licensed; and the evidence is undisputed and it was stipulated that plaintiff was not so licensed, that it is a citizen and resident of New York, and that by the terms of the alleged contract it claims to have been employed in New York to sell to a resident of New York, for a commission, a producing oil and gas lease on land in Texas, which is an 'estate or interest in real estate' within the aforesaid statute.

"Second. This suit for a broker's commission may not be maintained in Texas because plaintiff, a corporation incorporated under the laws of New York, seeks by this suit to recover the reasonable value of services claimed to have been rendered by it as a broker, and the evidence is undisputed that a substantial part of such services was rendered by plaintiff within the State of Texas, notwithstanding the fact that plaintiff never at any time has been granted a permit to do business in Texas; and consequently the maintenance of this suit is expressly prohibited by Arts. 1529 and 1536 of the Revised Civil Statutes [Vernon's Ann.Civ. St. arts. 1529, 1536]."

The appellee interposes these respective answers thereto:

"The oral contract upon which this suit is based is not void and unenforceable under the laws of the State of New York and this suit can be maintained in Texas, notwithstanding the fact that appellee had not obtained a real estate broker's license pursuant to Section 440-a of the Real Property Law of New York, for the reason that no such license was required, in that by (this) specific legislative enactment in New York, an oil lease is treated as personal property for all purposes of the General Laws of New York, except taxation, to-wit:

" 'Oil wells and all fixtures connected therewith, situate on lands leased for oil purposes and oil interests, and rights held under and by virtue of any lease or contract or other right or license to operate for or produce petroleum oil, shall be deemed personal property for all purposes except taxation' (Section 39, General Construction Law)."

"The maintenance of this suit is not prohibited by Articles 1529 and 1536 of the Revised Civil Statutes of Texas, because this suit was brought for the purpose of enforcing a contract which was entered into in the State of New York and which was performed in the State of New York. The plaintiff was not transacting business within the State of Texas, as contemplated by the provisions of said statutes, simply because some acts merely incidental to the performance of said contract were done in Texas."

Despite having been almost persuaded by the arguments of appellant's able counsel, this court, after mature consideration, is constrained rather to exercise its authority in upholding the appellee's counter-positions; both these pleas in bar are accordingly overruled.

In support of appellee's first answer, these authorities are collated: Agricultural Law of 1909, General Construction Law, Real Property Law, Village Law, Consolidated Laws of New York, Chapters 1, 22, 50, 64; Section 110 of the General Construction Law; People v. New York Central, 156 N.Y. 570, 574, 51 N.E. 312; O'Keefe v. Dugan, 185 App.Div. 53, 54, 172 N.Y.S. 558, unanimously affirmed

in 225 N.Y. 667, 122 N.E. 887; Matter of Hazelwood Oil Co., 195 App.Div. 23, 185 N.Y.S. 809; Wagner v. Mallory, 169 N.Y. 501, 62 N.E. 584; Sec. 440, Real Property Law of N.Y.; Wagner v. Mallory, 41 App.Div. 126, 58 N.Y.S. 526; Buck v. Cleveland, 143 App.Div. 874, 879, 128 N.Y.S. 864; People v. Ashworth, 220 App. Div. 498, 502, 222 N.Y.S. 24; Shepherd v. McCalmont Oil Co., 38 Hun 37, 40; Reeland v. Moore Oil Co., 242 App.Div. 462, 275 N.Y.S. 489; 59 Corpus Juris, Statutes, 946, 948; 48 New York State Department Reports 576; 54 New York State Department Reports 157; 1934 N.Y. Attorney General Reports 228; Bullock v. Cooley, 225 N.Y. 566, 571, 122 N.E. 630; Matter of Lawrence-Cedarhurst Bank, 247 App.Div. 528, 532, 288 N.Y.S. 301, affirmed, 272 N.Y. 646, 5 N.E.2d 374; People v. Dilliard, 252 App.Div. 125, 131, 132, 298 N.Y.S. 296; Hughes v. State, 134 Tex. Cr.R. 175, 114 S.W.2d 566; Railroad Commission v. Texas R. R. Company, Tex.Civ. App., 42 S.W.2d 1091; United States v. Sherebeck, 27 Fed.Cas. 1062, No. 16,275; Weingast v. Rialto Pastry Shop, 243 N.Y. 113, 117, 152 N.E. 693; Pritchard v. Norton, 106 U.S. 124, 129, 1 S.Ct. 102, 27 L. Ed. 104; Bernard Gloeckler Co. v. Baker Co., Tex.Civ.App., 52 S.W.2d 912; Belle Springs Creamery v. Schultz, Tex.Civ. App., 69 S.W.2d 564.

Authorities upholding the second one may be cited as follows: Security Co. v. Panhandle Nat. Bank, 93 Tex. 575, 57 S.W. 22; Nelson v. Detroit Co., Tex.Com. App., 56 S.W.2d 860; Jackson Woolen Mills v. Moore, Tex.Civ.App., 154 S.W. 642; Wilson v. Peace, 38 Tex.Civ.App. 234, 85 S.W. 31; Lynch Davidson v. Denman Lumber Co., Tex.Civ.App., 272 S.W. 803; Restatement of Conflicts of Law, § 331; 2 Corpus Juris, p. 516, 2 C.J.S., Agency, § 65; Sargent v. Barnes, Tex.Civ.App., 159 S.W. 366; New State Land Co. v. Wilson, Tex.Civ.App., 150 S.W. 253; Hilker v. Agricultural Corp., Tex.Civ.App., 96 S.W. 2d 544; Nelson v. Detroit Security Co., Tex.Com.App., 56 S.W.2d 860; 23 Am. Jurisprudence, § 371, p. 356; Lakeview Co. v. San Antonio Co., 95 Tex. 252, 66 S.W. 766; Security Co. v. Panhandle Nat. Bank, 93 Tex. 575, 57 S.W. 22; Latham Co. v. Louer Bros., Tex.Civ.App., 176 S. W. 920; Phillip A. Ryan Co. v. Ball, Tex. Civ.App., 177 S.W. 226; American Mfg. Co. v. Skidmore Co., Tex.Civ.App., 170 S.W. 128; White Sewing Machine Co. v. Sneed, Tex.Civ.App., 174 S.W. 950; Bar-

cus v. J. I. Case Threshing Machine Co., Tex.Civ.App., 197 S.W. 478, writ dismissed; King v. Monitor Co., 42 Tex.Civ. App. 288, 92 S.W. 1046; Memphis Co. v. Wilson Co., Tex.Civ.App., 244 S.W. 1062; 14A Corpus Juris p. 1281, 20 C.J.S., Corporations, § 1839; 5 Thompson on Corporations, Second Ed., §§ 6715 and 6717.

In other words, it is held (1) that the previously described oral contract herein sued upon was not void ab initio under the laws of New York because of the admitted fact that the appellee, when making it with appellant's predecessor, was not then licensed as a real estate broker under the laws of that state; and (2) that its maintenance in Texas was not prohibited by this State's R.S. Articles 1529 and 1536, because the appellee was a New York corporation without a permit to do business in Texas, and the contract, as declared upon, was one for a broker's commission for the appellee's having been the procuring cause of the sale of an oil and gas lease in this state.

An extended exposition of the principles upon which these conclusions have been rested is interdicted by the demands upon this court's time from other pressing business before it, but it ventures to point out what, in its view, seem to be the vices lying at the bases of appellant's two pleas:

(1) The claimed invalidity of the contract is based upon isolated "Secs. 440, 440-a, 442-d, and 442-e, of Art. 12-A, of the Real Property Law of New York", as disassociated from "Sec. 39 of the General Construction Law"; whereas these statutes seem to this court to be interrelated and integral parts of one New York system of statutory codification and construction, and, when so regarded and applied to this situation, to show that the subject matter of this contract, an oil lease, whether in Texas or elsewhere, was simply treated under the New York laws as personal property for all purposes, except those of taxation. The holdings and statutes cited under this question, supra, seem to remove judicial doubt as to the soundness of such a construction.

(2) The insistence that rendition of a substantial part of the declared-upon services within the State of Texas brought the suit under the contravention of R.S. Articles 1529 and 1536 loses sight of determinative findings by the jury, on sufficient evidence, of the facts the other way, in that such acts as were performed in Texas in

furtherance of the contract were merely incidental to its performance, hence were permissible under the authorities already cited on this question and did not constitute the transaction here of such prohibited business; indeed, those holdings settle the rule to be that Article 1536 does not deny all corporations not having a permit to do business in Texas the privilege of maintaining suits here—on the contrary, it only bans such as do or have done business in this state in violation of Article 1529; that is, when the real business done is and has occurred elsewhere—as in this instance, where the contract was made and in all substantial respects performed and acted under in New York—mere incidents to those outside acts that may have been done in Texas would not constitute such a violation; especially so here, when the undisputed testimony showed that this appellee had never acted as a broker in any sale made in Texas of a product to be delivered there; on the contrary, that all its business, and particularly that with reference to this contract, had been transacted in New York, and that its president, in pursuance of that policy, had only been in Texas a few times prior to the conclusion of this deal, at only one of which anything was said or done about it.

Wherefore, under the findings and evidence, it appears that this contract was one made in New York, to be performed in New York, and was in all structural and major things actually performed there; its essential character as such was not destroyed because as a mere incident thereto the appellee's president, while in Texas on the last of the visits just mentioned, during its pendency and before the conclusion of the sale as so made, discussed his previous negotiations and conferences that had occurred in New York City with the Frankels, at their office and their home in Houston while at dinner with them, during which conversations he asked that their Houston representative, Mr. Salrin, please forward to New York Salrin's recommendation as to what price Tidewater should pay for the Krohn lease; especially since Tidewater's New York office had already requested him to do that same thing. Such subsidiary, incidental, and nonconclusive negotiations, and they were all the evidence shows occurred, did not constitute the doing of such business in Texas as the cited statutes prohibit.

Neither has this court found reversible error in the trial proceedings; it therefore overrules all appellant's attacks upon them, they having, in addition to the initial pleas in bar, raised objections to the submission of the cause at all, to the special issues given, to the receipt of the jury's findings in response thereto, and, finally, to the rendition of the judgment itself, upon all the grounds adverted to.

■ As appellant's four above-quoted pleas have presaged, its major defenses upon the facts were: (1) that appellee had been shown not to have been the procuring cause of the sale as made on April 15 of 1935, but that, instead, its own general counsel, William N. Bonner, had been its sole procuring cause; (2) that any and all of the appellee's efforts to sell the Krohn lease to Tidewater had been solely referable to a written contract between it and the Alpha Company, providing in part for 2½ per cent commission on the sale price of any of appellant's leases that appellee might make for it to Tidewater during the life thereof; that such contract had expired on December 31 of 1934, without any such a sale having ever been effected by the appellee, since appellant had promptly rejected in the summer of 1934 the only offer of a sale appellee had ever procured for it under that contract, and that, thereafter, neither the Alpha Company, nor the appellant itself, ever had any other dealings or negotiations with the appellee touching the sale of the Krohn lease, or any other one.

It is thought the jury's verdict settled these contentions on the facts adversely to the appellant, and that its findings are neither without any evidence, nor so against the weight of the evidence upon any of those features of the cause, as to be wholly wrong; on the contrary, after a laborious examination of the statement of facts, it is, as indicated, this court's conclusion that each and all of the jury's answers resolved the conflicts in the testimony relating to the matters submitted under each inquiry well within the limitations of the jury's exclusive province.

The jury's verdict as a whole may be an instance of some inferences of facts from others in evidence, but if so, a close study of it convinces this court that they were all legitimate ones from the facts actually in evidence; it may further be that some of the inquiries were leading in character and constituted the assumption of details

that well might have been in better form, but at all events the appellant apparently was about as much sinning as sinned against in this respect (whether or not it properly at the time objected to such submissions on that ground), in that its own three specially requested issues were of the same character in affirmatively submitting its defenses on facts as therein shown; irrespective of the answers to the other twelve issues submitted, those under these three—likewise upon sufficient evidence—negatived, in effect, appellant's direct claims:

(1) That its predecessors in interest had, after they had first employed appellee to negotiate for them the sale of this lease to the Tidewater and it had thereunder offered to purchase it for $800,000 or $850,000, they had notified appellee's president that the lease had been withdrawn from the market;

(2) That the negotiations and efforts of Wm. N. Bonner had been the procuring cause of the sale of the lease as finally made;

(3) That from the date appellee began negotiations for the sale to Tidewater a reasonable time thereafter for it to have effected such a sale had elapsed, before the lease was actually sold to that company.

These findings, together with those establishing ratification of the appellee's services in its efforts to effectuate the sale under the contract by the appellant's predecessors, after full knowledge thereof, make plain that the services were originally contracted for, that they were recognized and acted under by both sides, that they were never abandoned by either up to the actual sale, and that Mr. Bonner's having quickly pushed such long-pending negotiations over the brink of an actual sale did not as a matter of law constitute the procuring cause thereof; at all events, the jury chose between him and the appellee as to which had been the procuring cause of the sale, and it may not be said their choice was without support in the testimony.

It is not deemed essential that this opinion be extended into a specific discussion of the great number of appellant's further contentions; such of them as in this court's opinion are properly before it have been carefully considered, with the conclusion that none of them reflect such error as was reasonably calculated to cause and probably did cause the rendition of an improper judgment herein; Rule 62-A.

It follows from these conclusions that the challenged judgment should in all things be affirmed; it will be so ordered.

Affirmed.

### On Motion for Rehearing.

A painstaking reconsideration has been given this cause, pursuant to invited arguments, both oral and in writing, from all parties; in these presentments both sides seem to be of the view that all the controlling questions in the controversy were involved in the original briefs and discussions, as well as in this court's former opinion.

So regarding it from the appellate perspective, and, being still unconvinced of error in that disposition, it is determined that the motion should be overruled.

■ Appellant's insistence on the rehearing that there was a fatal variance between the contract of employment as alleged by the appellee, and that found by the jury to have been made, is not thought to be sound; in this court's view, the allegation that appellee was employed "to act as broker for the purpose of entering into negotiations and effecting a sale to and with the Tidewater Oil Company" of the Krohn lease, and the jury's finding that appellee was employed "to negotiate a sale of the Krohn lease to Tidewater", upon which the claimed conflict is based, are essentially the same in meaning.

Furthermore, such a discrepancy between the pleading and proof, if it can be said to exist at all, is not deemed to be legally material, in that it does not appear in the circumstances, among them that appellant apparently acquiesced in a trial below upon the theory that there was no such evidence, that it was misled, surprised, or injured thereby; Morton Co. v. Dubuque Co., 287 Mass. 170, 191 N.E. 637; Allen v. Powell, 125 Ga. 438, 54 S.E. 137, 138; 3 Tex.Jur., Section 111, page 168; City v. J. J. & M. Taxman Co., Tex.Civ.App., 74 S.W.2d 524, 531, writ of error refused; Brotherhood v. Wood, Tex.Civ.App., 79 S.W.2d 665, 669; Southern Pacific R. Co. v. Kennedy, 9 Tex. Civ.App. 232, 29 S.W. 394; Coleman National Bank v. McDonald, Tex.Civ.App., 286 S.W. 487; City National Bank v. Penn, Tex.Civ.App., 92 S.W.2d 532; Walton v. Thomas, Tex.Civ.App., 84 S.W.2d 539; Parks v. Sullivan, Tex.Civ.App., 152 S.W. 704.

■ Moreover, the appellee did not limit its declared upon cause of action to the ex-

press verbal contract of employment alleged to have been made in January of 1934, but, in the alternative, further sought to recover upon quantum meruit; that declaration being based upon an alleged promise of the appellant, implied by law, binding it to pay for beneficial services the appellee alleged it had rendered it, which had been knowingly accepted. That a right of recovery, when predicated upon such facts, exists, is well settled. Page v. Estes, Tex.Civ.App., 142 S.W.2d 292; Colbert v. Dallas Joint Stock Land Bank, 129 Tex. 235, 102 S.W.2d 1031.

It is the opinion of this court that the questions of fact, so alternatively declared upon, had sufficient support both in the evidence and the jury's quoted findings thereon; wherefore, the verdict would still have proper support, even should the finding of an express contract be discarded. The motion will accordingly be refused.

Refused.